No. 107,904

STATE OF KANSAS, *Appellee*, v. TERRY L. BOWEN, *Appellant*.

(323 P.3d 853)

Opinion filed May 9, 2014.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This is Terry L. Bowen's direct appeal from his convictions of two counts of rape, one count of aggravated criminal sodomy, and one count of aggravated kidnapping. He advances various claims, which we have reordered for clarity: (1) his attorney's conflict of interest at his preliminary hearing; (2) the trial court's admission into evidence of his prior sex crimes for propensity purposes; (3) alleged insufficient evidence as to each alternative means of aiding and abetting in one rape count; (4) the district court's delivery of a written response to a jury question outside of Bowen's presence; (5) cumulative trial error; and (6) an illegal sentence that ordered him not to have contact with his codefendants or the victim. The State concedes the sentencing error.

We affirm Bowen's convictions but vacate the no-contact portion of his sentence because it exceeded the district court's authority under K.S.A. 2009 Supp. 21-4603d(a). His remaining sentence is valid and continues in force.

## FACTUAL AND PROCEDURAL BACKGROUND

The charges against Bowen stem from a report made by a 14-year-old girl (M.B.), who alleged Bowen and another man, Kenneth J. Fredrick II, raped her. She first reported this about 3 weeks after it occurred, explaining she had not come forward earlier because she had been threatened and was scared. About 1 week later, M.B. identified a third individual, Lora Gay, who M.B. alleged held her down while Bowen and Fredrick took turns assaulting her.

The State charged Bowen with two counts of rape—one as a principal and one as an aider and abettor—and one count each of aggravated criminal sodomy, aggravated kidnapping, and battery. See K.S.A. 2010 Supp. 21-3502(a)(1)(A) (rape); K.S.A. 2010 Supp. 21-3506(a)(3)(A) (aggravated criminal sodomy); K.S.A. 21-3421

(aggravated kidnapping); K.S.A. 21-3412(a)(2) (battery); K.S.A. 21-3205(1) (aiding and abetting). Bowen's case was consolidated with those against Gay and Fredrick on the defendants' motions. The jury convicted Bowen of two counts of rape, aggravated criminal sodomy, and aggravated kidnapping. He was acquitted of battery.

Based on Bowen's criminal history, which included two prior convictions for sexually violent crimes, the district court sentenced him as an aggravated habitual sex offender. See K.S.A. 2010 Supp. 21-4642. It sentenced Bowen to life imprisonment without the possibility of parole for one rape conviction and concurrent 155-month prison terms for the other three convictions. It also prohibited Bowen from having contact with M.B., Fredrick, or Gay.

Bowen timely appealed. Jurisdiction is proper under K.S.A. 2013 Supp. 22-3601(b)(3). Additional facts are described as pertinent to the issue addressed.

INEFFECTIVE ASSISTANCE OF PRELIMINARY HEARING COUNSEL

Bowen argues his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution was infringed because his attorney at the preliminary hearing had been the prosecutor who obtained Bowen's prior convictions of aggravated indecent solicitation 10 years earlier. Those convictions were later introduced at this trial as propensity evidence against Bowen. He now alleges his preliminary hearing counsel labored under a conflict of interest, amounting to structural error and requiring reversal of his convictions.

*Standard of Review*

The Sixth Amendment guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel includes the right to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); *State v. Gonzales,* 289 Kan. 351, 357, 212 P.3d 215 (2009); *Chamberlain v. State,* 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). "The purpose of the effective assistance guarantee 'is simply to ensure that criminal defen-

dants receive a fair trial.' " *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland*, 466 U.S. at 689).

To be meaningful the right to counsel necessitates more than a lawyer's mere presence at a proceeding. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013); *Galaviz*, 296 Kan. at 174. The right extends a duty of loyalty to the client. A defendant in a criminal trial must have " 'representation that is free from conflicts of interest.' " *Boldridge v. State*, 289 Kan. at 622 (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 [1981]).

An ineffective assistance of counsel claim based on a conflict of interest allegation involves mixed questions of fact and law. *Boldridge*, 289 Kan. at 622. We review the district court's underlying factual findings for substantial competent evidence and its legal conclusions based on those facts de novo. *Boldridge*, 289 Kan. at 622; *Gonzales*, 289 Kan. at 358-59.

*Additional Facts*

Bowen's preliminary hearing was consolidated with the other defendants', each of whom was represented by different counsel. When the hearing began, the State advised the court it had learned Bowen's attorney previously had prosecuted him for other crimes. The State noted Bowen was not raising this as a conflict of interest issue, but the State wanted the record to reflect there was no objection before proceeding.

Bowen's counsel then asked Bowen to acknowledge he had "prosecuted a case of yours that sent you to prison several years ago." Bowen agreed he understood this. Bowen's counsel then asked, "[A]re you asking that I continue as your attorney, and waive any conflicts?" Bowen responded affirmatively. Those responses prompted the court to inquire directly whether Bowen waived any conflict that may exist or had existed. Bowen again replied, "I have no problem." The court declared itself satisfied that Bowen waived any conflict and proceeded with the preliminary hearing.

The State called M.B. and one other witness. Bowen's attorney cross-examined M.B. on various subjects, including her prior living arrangements; the date on which she alleged the crime occurred;

her memory about the details of other events occurring during her time with Bowen, Gay, and Fredrick; whether M.B. had worked for Bowen and her motivation for accepting his offer of work; and the timing and circumstances of her disclosure of the crimes to her family. Bowen's attorney did not cross-examine the other witness.

After the close of evidence, the State argued it had established probable cause for each felony count charged. Bowen's attorney initially declined to make a closing statement; but after the other defendants' attorneys spoke, Bowen's attorney said:

"I think the only thing that the Court really needs to look at very hard right now with regard to Mr. Bowen is that, I believe [M.B.] was asked at least ten times how far it was between the date of the sex and the time that she told. And the fact is, she said it was two or three weeks before the 4th of July that it happened and the State themselves are saying it's within the week prior."

The court found probable cause existed as to each felony count and bound the defendants over for trial.

Just over 2 months after the preliminary hearing, the State filed two motions. One sought admission of prior crimes evidence—including Bowen's guilty pleas to two counts of aggravated indecent solicitation of an 11-year-old child from 10 years earlier. Those were the cases in which Bowen's preliminary hearing counsel was prosecutor. The other motion argued that as a result of the State's desire to admit the prior crimes evidence, Bowen's preliminary hearing counsel now had a conflict of interest requiring appointment of new counsel. There was no hearing on the motion for appointment of conflict-free counsel because Bowen's preliminary hearing attorney obtained leave to withdraw.

Bowen's new attorney moved for a second preliminary hearing, alleging a conflict of interest had existed with the previous attorney that precluded effective representation, that the waiver colloquy at the preliminary hearing was insufficient, and that a separate lawyer should have been appointed to advise Bowen whether to waive the conflict. Notably, there were no specific allegations detailing how the alleged conflict impacted the adequacy of the first attorney's performance at the preliminary hearing.

The State opposed the motion, arguing the court's inquiry had been adequate. It also countered that no conflict existed at the

time of the preliminary hearing because the State had not yet indicated its intent to introduce the prior crimes evidence.

The district court denied the request for a new preliminary hearing. It ruled the colloquy with Bowen waived any conflict. It also found in the alternative that there was no conflict at the preliminary hearing because the State had not yet raised the prior crimes evidence as an issue in the case.

After he was convicted, Bowen moved for a new trial based in part on a claim that preliminary hearing counsel did not do a thorough job. He attributed this alleged deficiency to the conflict of interest. This argument essentially repeated the earlier motion for a second preliminary hearing and did not provide specific examples how the alleged conflict resulted in counsel's deficient performance or otherwise adversely affected Bowen's representation. The court denied the motion, referring back to its pretrial findings.

*Discussion*

Bowen argues his conflict waiver at the preliminary hearing was insufficient because the court did not follow certain procedures applicable to conflict waivers stated in the Kansas Rules of Professional Conduct (KRPC). Specifically, he points to KRPC 1.7(b)(4) (2013 Kan. Ct. R. Annot. 517) (notwithstanding a concurrent conflict of interest, lawyer may represent client if client gives informed consent, confirmed in writing); KRPC 1.9(a) (2013 Kan. Ct. R. Annot. 536) (certain circumstances dictating when former client must give informed consent, confirmed in writing, in order to represent another client whose interests are materially adverse to former client's interests); and KRPC 1.11(a) (2013 Kan. Ct. R. Annot. 543) (consent from government entity for former attorney to represent private client with matter in which lawyer participated personally and substantially as a public officer or employee).

But these are ethical standards of practice applicable to attorneys. They do not establish what a court must do to satisfy its independent duty to appropriately inquire into a potential conflict of interest. See *State v. Sharkey*, 299 Kan. 87, 99, 322 P.3d 325 (2014) (duty to inquire further when defendant articulates dissatisfaction in continuing with current counsel); *State v. Carter*, 284

Kan. 312, 322-23, 160 P.3d 457 (2007) (same); *State v. Vann*, 280 Kan. 782, 789-90, 127 P.3d 307 (2006) (same); *State v. Taylor*, 266 Kan. 967, 974-75, 975 P.2d 1196 (1999) (same).

Our caselaw is clear that a conflict of interest under the Kansas Rules of Professional Conduct is not dispositive as to whether a criminal defendant suffered a denial of the Sixth Amendment guarantee of assistance of counsel. See *State v. Gleason*, 277 Kan. 624, 652, 88 P.3d 218 (2004); see also *Mickens v. Taylor*, 535 U.S. 162, 176, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); see also *Galaviz*, 296 Kan. at 184-85 (quoting *Mickens*); cf. *Cheatham*, 296 Kan. at 433 (distinguishing between standards of attorney conduct compelled by the Sixth Amendment and those set out in ABA Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Cases).

We have held repeatedly that a district court abuses its discretion when it fails to inquire into a potential conflict that is made known to it. *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013); *Vann*, 280 Kan. at 789; *Taylor*, 266 Kan. 967, Syl. ¶ 3. But that circumstance is not presented in this case because after the State informed the district court that Bowen's attorney previously prosecuted him, Bowen waived any conflict arising from that prior relationship. And when the district court made specific inquiry directly with Bowen on the record, Bowen repeated that he had "no problem" with his counsel or continuing with the preliminary hearing.

Bowen's argument relies exclusively on a claim of structural error that he asserts requires automatic reversal. But that contention fails as a matter of law. We have held that under *Mickens*, automatic reversal, *i.e.*, structural error based on a conflict between client and counsel, is appropriate only when the circumstances present: (1) multiple concurrent representations; (2) a timely objection, meaning an objection before or during the proceeding; and (3) a failure of the district court to inquire and determine there is no conflict. *Galaviz*, 296 Kan. at 183. Bowen's case does not have these characteristics, so a structural error analysis does not apply.

Instead, the circumstances present a conflict based on preliminary hearing counsel's representation of interests adverse to Bowen in a prior matter, *i.e.*, a successive representation. We have described successive representations as a subcategory of situations we have labeled "the *Mickens* reservation" in which a conflict is " 'rooted in counsel's obligations to former clients' or 'counsel's personal or financial interests.' " *Galaviz*, 296 Kan. at 184 (quoting *Mickens*, 535 U.S. at 174). And while it remains unsettled whether this successive representation subcategory is to be viewed under the deficient performance test from *Strickland*, or the adverse effect test from *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), it is clear we do not apply a structural error analysis based solely on the existence of a successive conflict. *Cheatham*, 296 Kan. at 447-48 (adverse effect analysis applied when State failed to argue more onerous *Strickland* analysis applied); *Galaviz*, 296 Kan. at 193 (same).

As we have explained previously, the United States Supreme Court answered in *Mickens* what a defendant must show in order to demonstrate a Sixth Amendment violation when the trial court fails to inquire into a potential conflict of interest it knew about or reasonably should have known about. *Galaviz*, 296 Kan. at 180. And we have noted that when it is claimed the defendant's attorney represented conflicting interests, the showing required is more "nuanced" than those involving deficient performance or a complete denial of counsel. *Galaviz*, 296 Kan. at 181. Bowen fails to appreciate this nuance. We hold Bowen's conflict of interest claim is without merit in the form in which he presents it to this court, *i.e.*, that his preliminary hearing counsel's conflict, if any, resulted in structural error.

## ADMISSION OF PRIOR SEX CRIMES EVIDENCE

Bowen next argues the district court erred by allowing the State to introduce evidence that he had previously been convicted of sexual battery involving a 12-year-old victim and of two counts of aggravated indecent solicitation of a child involving an 11-year-old victim. This evidence was offered expressly to demonstrate his pro-

pensity to commit the acts alleged by M.B. See K.S.A. 2013 Supp. 60-455(d).

Bowen advances three arguments: (1) K.S.A. 2013 Supp. 60-455(d) is subject to subsection (a), which bars propensity evidence; (2) the evidence was not relevant and its probative value was outweighed by its potential for causing undue prejudice; and (3) the evidence was inadmissible under K.S.A. 60-447.

*Standard of Review*

Appellate review of a trial court's decision to admit evidence is a two-step process. First, the appellate court determines whether the evidence is relevant. *State v. Phillips*, 295 Kan. 929, 947, 287 P.3d 245 (2012). Evidence is relevant if it has a "tendency in reason to prove any material fact." K.S.A. 60-401(b). "Relevance is established by a material or logical connection between the asserted facts and the inference or result they are intended to establish." *Phillips*, 295 Kan. 229, Syl. ¶ 7. Relevant evidence is both: (1) material, *i.e.* the fact has a legitimate and effective bearing on the decision of the case and is in dispute; and (2) probative, *i.e.* has " 'any tendency in reason to prove' " the fact. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013). Materiality is reviewed de novo, while probativity is reviewed for abuse of discretion. 297 Kan. at 622.

If the evidence is relevant, the court next applies the statutory provisions governing admission and exclusion of evidence. *Phillips*, 295 Kan. at 947. "These rules are applied either as a matter of law or in the exercise of the district court's discretion, depending on the rule in question." *State v. Hughes*, 286 Kan. 1010, 1020, 191 P.3d 268 (2008). Whether the probative value of otherwise relevant evidence outweighs its potential for undue prejudice is reviewed for abuse of discretion. See *Phillips*, 295 Kan. at 947; *State v. Wilson*, 295 Kan. 605, 621, 289 P.3d 1082 (2012).

A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based. *State v. Huddleston*, 298 Kan. 941, 318 P.3d 140

(2014). But "[w]hen the adequacy of the *legal* basis of a district judge's decision on admission or exclusion of evidence is questioned, we review the decision de novo." *State v. Gunby*, 282 Kan. 39, 47-48,144 P.3d 647 (2006).

*Discussion*

Bowen's claim that K.S.A. 2013 Supp. 60-455(d) is subject to the limitation on admission of propensity evidence in subsection (a) has been expressly rejected. See *State v. Remmert*, 298 Kan. 621, 627-28, 316 P.3d 154 (2014) (citing *State v. Prine*, 297 Kan. 460, 303 P.3d 662 [2013]); see also *State v. Spear*, 297 Kan. 780, 789, 304 P.3d 1246 (2013) (same); *Prine*, 297 Kan. at 475-76. Consequently, admitting this prior crimes evidence at Bowen's trial would be error only if it was not relevant or if some other exclusionary rule barred its use.

In sex offense cases, propensity evidence is material, *i.e.*, has a "legitimate and effective bearing" on defendants' guilt. See *Remmert*, 298 Kan. at 627-28 (prior diversion for sex crime against young girl relevant to guilt in prosecution for sex crime against young boy); see also *Spear*, 297 Kan. at 789 (victim's prior molestation allegations against defendant would have been admissible propensity evidence in later prosecution for aggravated indecent liberties involving same victim); *Prine*, 297 Kan. at 480 (defendant's prior sexual abuse of daughter and younger sister admissible propensity evidence in prosecution for sexual abuse against friend's daughter). And the evidence here was probative of Bowen's propensity to commit the acts alleged by M.B. because the prior crimes were sufficiently similar to M.B.'s allegations.

Bowen's prior crimes were sexual battery against a 12-year-old girl—then defined as unlawful, nonconsensual, intentional touching of a person with intent to satisfy sexual desires; and aggravated indecent solicitation of an 11-year-old girl—then defined as soliciting a child under 14 to commit an unlawful sexual act. See K.S.A. 21-3511 (defining aggravated indecent solicitation of a child); K.S.A. 21-3517 (defining sexual battery). These crimes each involved sexual acts or preparatory actions toward sexual acts with young girls, and one involved nonconsensual sexual contact. Evi-

dence of these crimes made more probable the truth of the State's proposition that Bowen had a disposition to sexually abuse female victims approximately the same age as M.B. See *Remmert*, 298 Kan. 626-28 (defendant's prior abuse of young stepdaughter relevant in prosecution for abuse of similarly aged grandson of defendant's girlfriend).

We likewise reject Bowen's claim that this evidence's prejudicial effect outweighed its probative value because no material facts were in dispute. His argument is incorrectly premised on an assumption that K.S.A. 2010 Supp. 60-455(d) did not permit propensity evidence. We hold the district court did not abuse its discretion because propensity evidence is admissible and the district court addressed the appropriate considerations when balancing the probative value and prejudicial effect of the evidence.

This court has cited with approval various factors for balancing the probative value of propensity evidence in sexual abuse cases against its potential for prejudice:

"1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct. [Citations omitted]." *United States v. Benally*, 500 F.3d 1085, 1090-91 (10th Cir. 2007) (cited with approval in *Prine*, 297 Kan. at 478).

See *Remmert*, 298 Kan. at 628.

In Bowen's case, the district court carefully controlled how this evidence was presented. It decided it would allow the State to admit only a journal entry of conviction; considered the similarity of the offenses; and excluded witness and victim testimony, which it considered more prejudicial. Moreover, presentation of this evidence was not time consuming, as it was admitted at trial as a written stipulation given to the jury, rather than through testimony, together with an instruction cautioning the jury that a guilty verdict could not be based on the prior crime evidence alone.

The circumstances surrounding the district court's decision to admit this evidence and its presentation were consistent with our previous caselaw. We hold the district court did not abuse its discretion in concluding the evidence's probative value outweighed the potential for undue prejudice. See *Remmert*, 298 Kan. at 628.

Finally, we reject Bowen's argument that the district court erred in admitting this prior crimes evidence based on K.S.A. 60-447, which governs evidence of an accused's character. See K.S.A. 60-447 (trait of accused's character to prove guilt admissible only after defendant introduces evidence of good character). The State argues Bowen failed to assert K.S.A. 60-447 as grounds for excluding the evidence below, so it is not preserved. The State is correct.

A party seeking appellate review of erroneously admitted evidence must lodge a contemporaneous objection "so stated as to make clear the specific ground of objection." K.S.A. 60-404; see *State v. Johnson*, 266 Kan. 322, 335, 970 P.2d 990 (1998) (" '[T]he specific grounds for an objection must be given at trial to preserve an issue for appeal.' ") Failure to raise a K.S.A. 60-447 objection at trial prevents appellate review. *State v. Richmond*, 289 Kan. 419, 428-30, 212 P.3d 165 (2009) (declining first-time appellate review of K.S.A. 60-447 claim when trial counsel failed to assert statute as grounds for objection). Bowen's K.S.A. 60-447 argument, therefore, is not preserved for appeal.

### ALTERNATIVE MEANS OF AIDING AND ABETTING

In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this court adopted what is referred to as the "alternative means rule," or its corollary "super-sufficiency requirement," stating:

" '[W]here a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.]' "

The district court instructed the jury that it could convict Bowen for the second rape count only if it found that he "intentionally aided, abetted, advised, counseled, or procured Kenneth J. Fredrick II in the commission of rape." See K.S.A. 21-3205(1). Based on *Timley*, Bowen argues for the first time on appeal that the dis-

trict court instructed the jury that rape could be committed under the aiding and abetting statute in at least five different ways or alternative means.

The State contends no alternative means problem arises because aiding and abetting is not itself an alternative means of committing the underlying offense, *i.e.*, rape. In the alternative, the State argues the aiding and abetting statute does not set out five alternative means of aiding and abetting. We agree with the State's first argument that aiding and abetting is not an alternative means of committing rape, rendering it unnecessary to address the second argument.

*Standard of Review*

Whether a statute creates alternative means of committing a crime is a matter of statutory interpretation and construction and is a question of law subject to de novo review on appeal. *State v. Foster*, 298 Kan. 348, 352-53, 312 P.3d 364 (2013).

*Discussion*

Bowen admits he raises this issue for the time on appeal but argues it may be reviewed anyway because his fundamental right to a unanimous jury verdict is implicated. The State does not dispute this point. It addresses the merits without arguing whether this issue is preserved. We will address the merits of the issue because it implicates whether there is sufficient evidence to support the conviction. *State v. Cheffen*, 297 Kan. 689, 699-700, 303 P.3d 1261 (2013).

In *State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 (2014), we recently held the aiding and abetting statute did not establish alternative means in the context of its application in conjunction with a first-degree murder charge under K.S.A. 21-3401(a). In *Betancourt*, 2014 WL 1407666, at *6, we held:

"The more accurate approach is to consider the language of the aiding and abetting statute to be an assignment of criminal responsibility, rather than the creation of a distinct element of a crime. K.S.A. 21-3205 makes a person equally liable for crimes of others if there is a concerted effort to carry out the crime. It does not, for instance, establish two different crimes, one consisting of shooting a victim and the other consisting of handing a gun to someone for the purpose of

shooting a victim. Similarly, it does not establish two different crimes for committing a murder, one committed by firing a gun and the other by driving the getaway car. Instead, the legislative intent, as expressed in the language of the aiding and abetting statute, is to make each individual who engages in a concerted action to carry out a crime equally culpable. [Citation omitted.]".

Since aiding and abetting is not an alternative means of committing the underlying offense, Bowen's claim that the various ways of aiding and abetting set out in the statute are themselves alternative means of aiding and abetting necessarily must fail. We conclude the jury was properly instructed and sufficient evidence supported the aiding-and-abetting rape conviction.

## WRITTEN RESPONSE TO JURY QUESTION

Bowen next argues the district court violated his statutory and constitutional rights by answering a jury inquiry during deliberations with a written note delivered by court personnel instead of the trial judge replying in open court. The State concedes error may have occurred but argues any error was harmless. See *State v. King*, 297 Kan. 955, Syl. ¶ 3, 305 P.3d 641 (2013) (jury question must be answered in open court in the defendant's presence). The applicable statute is K.S.A. 22-3420(3), which provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where information on the point of law shall be given, or the evidence shall be read or exhibited to them *in the presence of the defendant*, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney." (Emphasis added.)

### Additional Facts

During deliberations, the jury requested clarification for the word "confinement" as it related to the aggravated kidnapping charge set out in the jury instructions. The district court convened counsel and then on the record, in the presence of the defendants, discussed how to respond. The State proposed explaining that "taking or confinement . . . requires no particular distance or removal, nor any particular time or place of confinement." Bowen objected, arguing the term "confinement" spoke for itself. The other defendants joined that objection.

The district court agreed with the State and sent a written response to the jury with that explanation. The note was delivered to the jury room by court personnel; it was not read to the jury in open court with the defendants present. No defendant objected to this manner of delivery at the time. The district court recessed, and the next activity on the record was the court announcing the jury had reached a verdict.

*Standard of Review*

Constitutional claims are questions of law subject to de novo review. *State v. Engelhardt,* 280 Kan. 113, 138, 119 P.3d 1148 (2005).

*Discussion*

All agree the trial court's procedure did not conform to K.S.A. 22-3420(3). And from this, Bowen attempts to extract three infringements to his constitutional rights: (1) violation of his right to be present; (2) violation of the right to a public trial; and (3) violation of his right to an impartial judge. The State initially raises preservation issues, which have merit as to some of these claims, so we consider those first.

*Preservation/Waiver/Abandonment*

Constitutional issues generally cannot be raised for the first time on appeal. See *State v. Gomez,* 290 Kan. 858, 862, 235 P.3d 1203 (2010) (acknowledging the general rule). The State argues this issue was abandoned because Bowen did not object to the procedure used by the district court to respond to the jury inquiry prior to appeal. But there are three recognized exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. *State v. McCullough,* 293 Kan. 970, 998, 270 P.3d 1142 (2012).

The State asserts first that Bowen did not argue in his brief the existence of any exceptions, so Bowen's brief failed to comply with Supreme Court Rule 6.02(a)(5) (2013 Kan. Ct. R. Annot. 39-40)

(The party briefing an issue on appeal must make "a reference to the specific location in the record on appeal where the issue was raised and ruled upon. If not raised below, explain why the issue is properly before the court."). The State reasons that even if there were an exception that might permit Bowen to raise this error for the first time on appeal, Bowen was obligated to affirmatively argue application of such exception and failing to do so waived it.

This is an arguable point, and we fail to understand why Bowen would not respond to the State's preservation arguments through a reply brief. See *State v. Williams*, 298 Kan. 1075, Syl. ¶ 4, 319 P.3d 528 (2014) (agreeing appellant failed to comply with Rule 6.02[a][5] and warning future litigants to explain why an issue is properly before the court). But Bowen's brief was filed before *Williams*, so we determine not to enforce its warning at this time. That, however, does not resolve the other waiver/abandonment concerns argued by the State and we must consider each of Bowen's arguments separately.

As to Bowen's claim that his right to be present was compromised, we will consider its merits because the statute sets out the procedure required, the procedure admittedly was not followed, and we have previously recognized this error implicates a defendant's constitutional right to be present. See *King*, 297 Kan. at 968 (failure to comply with K.S.A. 22-3420[3] violates constitutional right to be present); but see *Cheffen*, 297 Kan. at 697-99 (declining to review for first time on appeal a jury unanimity claim flowing from error in jury polling procedure because jury unanimity is statutory, not constitutional right).

As to Bowen's alternative arguments, *i.e.*, that the jury-question procedure violated his rights to public trial and to an impartial judge, we hold they are waived or abandoned. Neither is adequately briefed, and Bowen fails to sufficiently address how the statutory violation implicated a deprivation of his constitutional right to a public trial or to an impartial judge.

When a litigant fails to adequately brief an issue it is deemed abandoned. *Williams*, 298 Kan. at 1083; see also *State v. Rojas-Marceleno*, 295 Kan. 525, 543, 285 P.3d 361 (2012) (issue abandoned for failure to adequately brief it); *State v. Torres*. 280 Kan.

309, 331, 121 P.3d 429 (2005) (Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue; when appellant fails to brief an issue, that issue is waived or abandoned.); and Rule 6.02(a)(5) (2013 Kan. Ct. R. Annot. 39) (appellant's brief must include "the arguments and authorities relied on").

Specifically, in advancing his public trial argument, Bowen asserts only that: "By conducting these matters in the jury room, a place where non-juror members of the public may not go, there was no opportunity for the public to observe this critical stage of the trial." He then claims this was "a clear violation of [his] fundamental constitutional right to a public trial, constituting structural error and requiring automatic reversal of [his] convictions." Bowen advances these conclusions without citation to authority.

But some courts have addressed similar errors with mixed results. Compare *State v. Swanson*, 112 Hawaii 343, 353-54, 145 P.3d 886, 896-97 (Ct. App. 2006) (determining that right to public trial was not violated when trial judge responded to jury questions after hours and public could not be present), *State v. Sublett*, 176 Wash. 2d 58, 70-78, 292 P.3d 715 (2012) (determining right to public trial not implicated when district court personally responded to a jury question inside the jury room), with *Commonwealth v. Patry*, 48 Mass. App. Ct. 470, 473-76, 722 N.E.2d 979 (2000) (holding right to a public trial was violated when judge entered jury room to issue a supplemental instruction). Bowen does not discuss this caselaw— or any other, for that matter—and does not give this court the benefit of any analysis, which is particularly suspect given his claim that he alleges this constitutional infraction is structural error.

Similarly, Bowen abandons his impartial judge argument. His point seems to be that the district judge needed to be present to watch over delivery of its written response, and he advances no claim that the presiding judge showed actual or potential bias. He again fails to cite any authority for his conclusion that the statutory violation implicated this particular constitutional right. And the authority he does cite does not concern the right to an impartial judge, but rather a defendant's right to be present. See *State v. Brown*, 362 N.J. Super. 180, 827 A.2d 346 (2003).

We hold Bowen's public trial and impartial judge arguments are not properly raised, so we will not consider them. The remaining question is whether reversal is required because the district court's procedure violated Bowen's right to be present. We consider that next.

### Right to Be Present

A violation of the procedure for answering jury questions set out in K.S.A. 22-3420(3) constitutes both a violation of a defendant's statutory and constitutional right to be present under K.S.A. 22-3405(1) and the Sixth Amendment to the United States Constitution. See *King*, 297 Kan. at 968 (citing *State v. Herbel*, 296 Kan. 1101, 1109, 299 P.3d 292 [2013]). Bowen argues this constitutes structural error and reversal of his convictions is required.

But this court has held that a constitutional harmless error analysis applies under these circumstances. See *King*, 297 Kan. at 968-69 (federal constitutional harmless error standard applicable to violation of K.S.A. 22-3420[3], citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]). Using this standard, reversal is not appropriate if the State, as the party benefitting from the error, can demonstrate " 'beyond a reasonable doubt that the error . . . did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility the error contributed to the verdict.' " 297 Kan. at 968 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

This court has also held that it will consider four factors when determining whether a district judge's communication with the jury outside the defendant's presence is constitutional harmless error: (1) the strength of the prosecution's case; (2) whether the defendant lodged an objection; (3) whether the communication concerned some critical aspect of the trial or was instead an innocuous and insignificant matter, as well as the manner in which the communication was conveyed to the jury; and (4) the ability of a posttrial remedy to mitigate the constitutional error. *Herbel*, 296 Kan. at 1111 (citing *State v. McGinnes*, 266 Kan. 121, 132, 967 P.2d 763 [1998]).

The State argues convincingly that there can be no harm, noting the dispute is really over the manner of delivering the response—not its substantive content. And Bowen does not claim the response itself was incorrect or otherwise prejudicial. Instead, Bowen speculates that having a bailiff deliver a note to the jury is a procedure susceptible to mischief, although there is nothing in the record suggesting any problem or harm.

We discern nothing from the *Herbel* factors to justify reversal. The State's evidence against Bowen was substantial, including the victim's testimony, physical evidence of sexual assault, propensity evidence, and inaccurate, contradictory pretrial statements by both codefendants. As to the second factor, no objection was made. As to the third, the subject matter of the communication was significant; but there is no suggestion that the content—which Bowen knew before the communication—was incorrect. And the manner of the note's delivery has raised no tangible suspicion. We note Supreme Court Rule 171 (2013 Kan. Ct. R. Annot. 272) requires those acting as court bailiffs to subscribe to an oath that, among other things, prohibits communicating with a jury unless ordered to do so by a court.

As to the fourth factor, both Bowen and his counsel were aware of the communication but chose not to pursue any posttrial remedies. This omission deprived the district court and this court of the opportunity to assess whether any harm actually occurred. It also prevented the district court from considering the availability and adequacy of any potential remedy to mitigate any constitutional harm that might have occurred. See *Rushen v. Spain*, 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) ("The prejudicial effect of [a judge's failure to disclose an ex parte communication with a juror] can normally be determined by a posttrial hearing.").

After reviewing these factors, we hold there is no reasonable possibility the district court's failure to deliver the response in Bowen's physical presence contributed to the verdict.

### CUMULATIVE ERROR

Bowen next argues cumulative error deprived him of a fair trial. But the only trial error was the district court's procedure in re-

sponding to the jury question. Therefore, cumulative error analysis is not applicable. *Foster*, 290 Kan. at 726 ("A single error does not constitute cumulative error.").

## No-Contact Order

Bowen finally argues the district court imposed an illegal sentence when it imposed a no-contact order as a condition of Bowen's lifetime postrelease supervision sentence. The State concedes the district court erred.

"An illegal sentence is one imposed by a court without jurisdiction, a sentence which does not conform to the statutory provision, either in character or the term of the punishment authorized, or a sentence which is ambiguous with regard to the time and manner in which it is to be served." *State v. Plotner*, 290 Kan. 774, 781, 235 P.3d 417 (2010). Both parties cite *Plotner.*

*In Plotner*, the court held a sentence of imprisonment and a no-contact order, which is a probation condition, is an inappropriate combination of dispositions that exceeds a sentencing court's authority under K.S.A. 21-4603d(a). The combination constitutes an illegal sentence. 290 Kan. at 782 (citing *State v. Post*, 279 Kan. 664, 112 P.3d 116 [2005]). The appropriate remedy is to vacate the no-contact order but leave the remainder of the sentence intact. See 290 Kan. at 782.

Because the no-contact order was illegal, we must vacate that portion of Bowen's sentence; the remaining portions of his sentence are valid and remain in force.

Convictions affirmed, and sentence vacated in part.