NOT DESIGNATED FOR PUBLICATION

No. 113,879

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH HARRIS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Stevens District Court; CLINT B. PETERSON, judge. Opinion filed March 17, 2017. Affirmed.

*Jonathan Laurans*, of Kansas City, Missouri, and *Adam Crane*, of The Crane Law Firm, LLC, of Overland Park, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

*Per Curiam*:  A jury convicted Kenneth Harris of four counts of rape and one count each of attempted rape, aggravated indecent liberties, aggravated intimidation of a victim, kidnapping, and abuse of a child. Harris appeals, arguing that (1) the district court should not have admitted evidence of his prior sexual misconduct under K.S.A. 2014 Supp. 60-455; (2) the district court should have provided a limiting instruction on the use of the K.S.A. 2014 Supp. 60-455 evidence; (3) the State presented insufficient evidence to support his convictions of aggravated intimidation of a victim and kidnapping; and (4)

1

his sentence of lifetime postrelease supervision is illegal. We affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2013, K.S. told her stepmother that her father, Harris, had been raping her for almost a year. After hearing this information, K.S.'s stepmother took K.S., left home, and reported the abuse to law enforcement. The next day K.S. went to the Western Kansas Child Advocacy Center for a forensic interview. K.S. told the interviewer that sometime between Halloween and Thanksgiving of 2012, Harris began "raping her" and "doing her." K.S. stated that Harris first raped her at the family's home. Harris was in the hot tub in the garage with K.S. and he made her touch his penis. He then forced her to lie on a mattress in the garage where he raped her. K.S. believed that this incident occurred around Halloween when she was in fourth grade because she remembered that there was a lot of blood in her underwear and it was difficult to rinse it out. K.S. could not provide a precise timeline, however, because she stated that she actively tried to forget what Harris did to her.

K.S. reported that after the first incident, Harris repeatedly raped her in her bedroom and bathroom, always covering her head with a blanket or pillow. K.S. told the interviewer that in addition to raping her, Harris would also insert objects into her vagina and would touch her vagina with his mouth and hands. When he raped her, K.S. stated that Harris would wear a "sock"—meaning a condom. Harris kept a box of condoms under K.S.'s bed for this purpose and when he was finished he would flush the condom down the toilet. Harris would tell K.S. that if she told anyone, he would kill her stepmother and her pets in front of her and he would then kill K.S. Additionally, K.S. reported that because she always bled after Harris raped her, Harris forced her to use tampons, even though she had not yet begun menstruating.

2

K.S. reported that Harris began threatening her to get her to submit to intercourse. Specifically, K.S. reported that Harris would hit her with a piece of wood if she did not obey. He also would tape her hands behind her back and tape her legs apart and to the bathroom counter with duct tape if K.S. resisted. Finally, K.S. stated that Harris' threats had escalated and he would hold a gun to her head, telling her that he would kill her if she did not submit. After the forensic interview, K.S. went to St. Catherine's Hospital for an examination. The examination revealed vaginal traumas in various states of healing consistent with ongoing sexual abuse.

Harris was arrested on September 25, 2013. On that afternoon, the Stevens County Sheriff's Office executed a search warrant on Harris' home. Agent Bethanie Popejoy, a special agent with the Kansas Bureau of Investigation's (KBI) Child Victims Unit assisted in the execution of the search warrant. Popejoy found two rolls of duct tape in the dining room, stained bedding, and firearms. After this initial investigation, K.S. contacted Officer Brian Schooley and turned over a pedicure tool that Harris had inserted into her vagina, a condom wrapper from a condom Harris used, and a tampon that she had saved. On October 5, 2013, Popejoy and Schooley conducted a search of the septic tank on Harris' property where they found five condoms, five tampons, and several condom wrappers that were the same brand as condoms sold in a nearby convenience store vending machine. The condom wrappers found in the septic system were also the same brand as the wrapper that K.S. had provided to Schooley.

Popejoy sent various items to KBI for testing, including a fitted sheet from K.S.'s bed, the pedicure tool, and the tampon K.S. had provided to Schooley; she decided not to send anything found in the septic tank, however, because the conditions of the septic tank made it extremely unlikely that a DNA profile could be obtained. James Newman, a forensic scientist at the KBI, found blood on the fitted sheet but could not obtain a DNA profile from the blood. Similarly, Newman was able to detect a mixed DNA profile on

3

the pedicure tool but was unable to match it to a particular individual. The tampon, however, had K.S.'s blood on it.

The State charged Harris with four counts of rape and one count each of attempted rape, aggravated criminal sodomy, aggravated indecent liberties, aggravated intimidation of a victim, kidnapping, aggravated assault, and abuse of a child. Prior to trial, the State filed a motion to admit evidence of prior incidents of sexual abuse under K.S.A. 2014 Supp. 60-455. The State requested that the district court admit evidence that Harris sexually abused P.P., his former stepdaughter, when she lived with him, and S.L., Harris' ex-wife, who he allegedly raped.

At a pretrial hearing on the State's K.S.A. 60-455 motion, the State informed the district court that it wished to have P.P. testify that when she was a minor living with Harris, she was subjected to prolonged sexual abuse by him. Specifically, P.P. would testify that when she was in second grade, Harris would whistle at her and call her "sexy." Harris would also play a game with her where he would pull her pants down and she was supposed to do the same back to him. Finally, P.P. would testify about two incidents where Harris sexually abused her. The first incident occurred when she was in second grade and she woke up from a nap to Harris fondling her breasts and genitals through her clothing. The second incident occurred when P.P. was in third grade and Harris pulled her onto his lap while he was watching pornography and again fondled her breasts and genitals and attempted to get his hands under her clothes. P.P. would also testify that after these incidents occurred, Harris would threaten her not to tell anybody. The State also sought to admit testimony from Harris' ex-wife, S.L., who claimed that Harris forcibly raped her while covering her head—as he did with K.S.

Harris objected to the admission of the testimony of both P.P. and S.L., arguing that the incidents were not sufficiently similar as to be material or relevant, and the evidence was far more prejudicial than probative. After taking the matter under

4

advisement, the district court issued a ruling admitting P.P.'s testimony under K.S.A. 2014 Supp. 60-455 but not that of S.L. The district court ruled that P.P. could testify that Harris fondled her, that he made her play a game where they would pull down each other's pants, and that he would "wolf whistle" at her and call her "sexy." The district court noted that the fact that P.P. and K.S. "were of tender years when the alleged sex offenses were perpetrated against them" rendered the evidence more probative than prejudicial. Conversely, the district court found that the disparity in ages between S.L. and K.S. "tip[ped] the scale in favor of the prejudicial value."

Harris' jury trial began on March 30, 2015. The State first called K.S. who testified about Harris' sexual abuse. The State then called P.P. who testified about the prior acts of sexual misconduct Harris committed against her as permitted by the district court. The State also called Schooley and Popejoy who testified about the investigation and the items found during the search of Harris' property and septic system. On the second day of trial, the State presented the testimony of the forensic interviewer, the nurse and doctor who examined K.B. for signs of sexual assault, and Newman, the KBI analyst.

After the State rested, Harris told the district court that he wished to testify against his attorney's advice. The district court held a brief recess to permit defense counsel to prepare for Harris' testimony; however, when they returned Harris stated that he no longer wished to testify. The defense rested without calling any witnesses. Harris' defense was essentially that the State did not present enough evidence to find him guilty beyond a reasonable doubt.

After a little over 4 hours of deliberation, the jury reached a verdict. It found Harris guilty of all charges except for aggravated criminal sodomy (count 6) and aggravated assault (count 10). Harris filed a motion to depart, which the district court denied at sentencing. The district court imposed a controlling sentence of life imprisonment with no possibility of parole for 50 years, to be followed by an additional

5

term of 61 months' imprisonment. He also received a term of lifetime parole. Harris timely appealed the district court's judgment.

## K.S.A. 60-455 EVIDENCE

Harris argues that the district court erred when it admitted P.P.'s testimony about Harris' prior sexual misconduct under K.S.A. 2014 Supp. 60-455. Specifically, Harris claims that there was not enough similarity between the charged crimes and P.P.'s allegations, and P.P.'s testimony was more prejudicial than probative, so it should have been excluded. Although the State addresses the merits of Harris' argument, it first points out that Harris failed to preserve this issue for appeal because he did not object to the admission of P.P.'s testimony at trial.

The State is correct. To preserve an issue related to the admission of evidence for appeal, a party must make a timely and specific objection to the admission of that evidence. K.S.A. 60-404; *State v. Breeden*, 297 Kan. 567, 579-80, 304 P.3d 660 (2013); *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012). Here, Harris objected to the admission of P.P.'s testimony at the pretrial hearing on the State's K.S.A. 60-455 motion. However, Harris did not make a contemporaneous objection at trial, nor did he renew his objection at the start of trial or ask for a continuing objection.

Harris contends that the issue is sufficiently preserved because he objected at the pretrial hearing and the district court's ruling "made clear" that another objection "would have been a nullity." However, the law is clear:  "a pretrial objection must be contemporaneously renewed during trial or preserved through a standing objection." *State v. Berriozabal*, 291 Kan. 568, 580, 243 P.3d 352 (2010) (holding appellant's pretrial objection to K.S.A. 60-455 evidence was not sufficient to preserve the issue for appeal where appellant failed to renew his pretrial objection). Harris' failure to renew his

6

objection at the time of P.P.'s trial testimony precludes appellate review of the merits of his claim. See *Berriozabal,* 291 Kan. at 580.

Although the issue is not preserved, we will briefly address the merits if for no other reason than to possibly foreclose a future claim of ineffective assistance of trial counsel for failure to make a contemporaneous objection. An appellate court's review of a district court's decision to admit evidence is a two-step process. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). First, the appellate court determines whether the contested evidence is relevant. 299 Kan. at 348. Relevant evidence must be both material in that it has a legitimate bearing on the case and is in dispute, and probative meaning it has any tendency to prove the material fact. 299 Kan. at 348. Whether evidence is material is reviewed de novo, while the probative value of evidence is reviewed for abuse of discretion. 299 Kan. at 348. If the admitted evidence was relevant, then the appellate court reviews whether its probative value outweighs its potential for "undue prejudice" for abuse of discretion. 299 Kan. at 348. A district court abuses its discretion when (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Prior to 2009, propensity evidence was inadmissible unless it was relevant to prove some other fact such as motive, opportunity, intent, preparation, plan, or absence of mistake. In 2009, the Kansas Legislature amended K.S.A. 60-455 to permit the use of propensity evidence in sex offense cases. Subsection (d) provides that: "in a criminal action in which the defendant is accused of a sex offense . . . evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

While K.S.A. 2014 Supp. 60-455 permits the use of propensity evidence in sex offense cases, the evidence still must be relevant to be admissible. *State v. Prine*, 297

7

Kan. 460, 477, 303 P.3d 662 (2013). Relevant evidence is evidence having "any tendency in reason to prove any material fact." *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). As we previously stated, the definition of relevance contains two elements: materiality and probative value. See *Prine*, 297 Kan. at 477. Evidence is material when the fact it supports is in dispute or at issue in the case. *Bowen*, 299 Kan. at 348. Evidence is probative if it has a logical tendency to prove any material fact. *Prine*, 297 Kan. at 477.

"In sex offense cases, propensity evidence is material, *i.e.,* has a 'legitimate and effective bearing' on defendants' guilt. [Citation omitted.]" *Bowen*, 299 Kan. at 349. Here, P.P.'s testimony that Harris sexually abused her is material. P.P.'s testimony is also probative of Harris' propensity to commit sex crimes against children because the acts alleged by P.P. were sufficiently similar to K.S.'s allegations. See 299 Kan. at 349. P.P. testified that Harris began molesting her while he was her stepfather and P.P. was living at his home. P.P. stated that on one occasion she woke up from a nap to Harris touching her genitals and chest through her clothing. On another occasion, Harris fondled her genitals and attempted to place his hands under her clothes. As noted by the district court, both victims were "of tender years" when Harris sexually abused them, and both victims were living with Harris at the time of the abuse. The similar ages of the two victims, the fact that Harris had a parental relationship with both P.P. and K.S., and the fact that both P.P.'s and K.S.'s allegations consisted of nonconsensual sexual contact tends to prove that Harris has a propensity to sexually abuse young girls of approximately the same age as K.S. The district court correctly determined that P.P.'s testimony was relevant.

Even if evidence is relevant, the district court can still exclude it if its probative value is outweighed by its potential for undue prejudice. See K.S.A. 60-445. The Kansas Supreme Court in *Bowen* set out various factors for courts to consider when balancing the probative value of propensity evidence in sex offense cases against its potential for prejudice:

8

"'1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.'" *Bowen*, 299 Kan. at 350 (citing *United States v. Benally*, 500 F.3d 1085, 1090-91 [10th Cir. 2007]).

Here, the district court did not err when it determined that the probative value of P.P.'s testimony outweighed the potential for undue prejudice. The district court carefully considered the evidence and only permitted P.P. to testify about the allegations against Harris that were similar to K.S.'s allegations. The district court took care to limit P.P.'s testimony to the amount necessary to establish Harris' propensity to sexually abuse girls similar in age to K.S. The district court also excluded the testimony of Harris' ex-wife after concluding that her allegations were not sufficiently similar to K.S.'s allegations and her testimony would be more prejudicial than probative. It cannot be said that no reasonable person would have taken the view adopted by the district court that the probative value of P.P.'s testimony was not outweighed by a risk of prejudice. Thus, the district court did not err in admitting P.P.'s testimony of Harris' prior acts of sexual misconduct under K.S.A. 2014 Supp. 60-455.

In a related issue, Harris also asserts that the district court committed reversible error when it failed to instruct the jury that P.P.'s testimony was limited to "propensity evidence," and was not to be considered as substantive evidence "bearing directly against Harris." The State contends that it is settled law that a limiting instruction for K.S.A. 2014 Supp. 60-455 evidence is not required in child sex abuse cases. Although the issue of the admissibility of P.P.'s testimony was not preserved for appeal, the jury instruction issue is not waived by Harris' failure to object at trial to the K.S.A. 60-455 evidence. See *Breeden*, 297 Kan. at 579-80 ("[Appellant] can raise an argument regarding the trial

9

court's failure to give a limiting instruction even if he did not object to the admission of the [K.S.A. 60-455] evidence.").

When an error in the giving or failing to give a jury instruction is claimed, an appellate court analyzes whether the jury instruction is legally and factually appropriate and, if so, whether the error is harmless. *State v. Solis*, 305 Kan. 55, 64-65, 378 P.3d 532 (2016). If the failure to give an instruction is raised for the first time on appeal, however, the failure to give the instruction will only warrant reversal if the failure was clearly erroneous; a failure to give a limiting instruction is clearly erroneous if the defendant firmly convinces the appellate court that the jury would have returned a different verdict had the instruction been given. *Solis*, 305 Kan. at 64-65. Here, the district court's failure to give a limiting instruction is raised for the first time on appeal, so Harris will succeed only if he can convince this court that the jury would have reached a different result at trial had the instruction been given.

Harris relies on *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), in support of his claim that the district court erred in not providing a limiting instruction; this reliance, however, is misplaced. In *Gunby*, the defendant was convicted of first-degree murder arising out of the strangulation death of his classmate. At trial, the district court admitted testimony regarding prior violent incidents between the defendant and the victim under K.S.A. 60-455, explaining that it was evidence of the "'*res gestae* of the situation.'" 282 Kan. at 59. On appeal, Gunby contested the district court's admission of this testimony, claiming that admission of the testimony was not permissible under K.S.A. 60-455 or, if it was admissible, the district court should have provided a limiting instruction to the jury. 282 Kan. at 47. Our Supreme Court noted that while K.S.A. 60-455 expressly prohibits the use of evidence of prior crimes or wrongs to prove a defendant's propensity to commit the charged crime, such evidence could be admissible to prove "some other material fact." 282 Kan. at 48. Due to the risk of unfair prejudice inherent in the admissibility of such evidence, our Supreme Court stated that trial courts should provide

instructions limiting the purpose for which evidence of similar offenses can be considered. 282 Kan. at 55, 58.

However, *Gunby* predated the 2009 amendments to K.S.A. 60-455; the 2009 amendments under subsection (d) expressly carved out an exception to the general rule against propensity evidence in child sex cases. *State v. Dean*, 298 Kan. 1023, 1032, 324 P.3d 1023 (2014) ("Under the 2009 version of K.S.A. 60-455, propensity evidence is admissible in sexual abuse cases as long as it is 'relevant and probative.'"). Our Supreme Court ruled in *Prine* that *Gunby*'s holding that a limiting instruction is necessary if evidence is admitted under K.S.A. 2009 Supp. 60-455 does not apply if evidence of acts or offenses of sexual misconduct is admitted under subsection (d). *Prine*, 297 Kan. 460, Syl. ¶ 4. Our Supreme Court explained:

> "[W]hen evidence was admitted under the unamended statute, in order to avoid the jury's consideration of the evidence for prohibited propensity, we required a limiting instruction listing the material facts in issue for which the evidence could be considered. [Citation omitted.] Although neither party challenges the continuation of this judicially created safeguard, its obsolescence under the amended statute is clear. In a sex crime prosecution governed by new subsection (d), there remains no reason to tell jurors to ignore the bearing prior sexual misconduct may have on the defendant's propensity to commit the charged crime or crimes. If other sex crimes or civil wrongs are relevant, *i.e.*, material and probative of propensity, the jury may consider them for that. We no longer need the workaround the limiting instruction hoped to ensure." *Prine*, 297 Kan. at 478-79.

Our Supreme Court addressed the interplay between *Gunby* and *Prine* in *Breeden*, 297 Kan. at 578-79. In *Breeden*, the court explained that if evidence was admitted under K.S.A. 2012 Supp. 60-455(d), which permits propensity evidence, then a limiting instruction is not necessary. 297 Kan. at 578. If, however, subsection (d) does not apply, then the court's "analysis is governed by the provisions discussed in *Gunby* and other cases imposing the requirement of a limiting instruction." 297 Kan. at 579. Therefore, as

11

this case is controlled by K.S.A. 2014 Supp. 60-455(d), the district court did not err when it failed to give a limiting instruction to the jury. If there is no error, there can be no clear error. See *State v. Betancourt*, 299 Kan. 131, 135, 143, 322 P.3d 353 (2014).

SUFFICIENCY OF THE EVIDENCE TO SUPPORT AGGRAVATED INTIMIDATION OF A VICTIM

Harris next argues that this court must vacate his conviction for aggravated intimidation of a victim. According to Harris, because the crime of aggravated intimidation of a victim requires "a *specific intent* to keep the offense secret from a *specific class of people* who *all* work in the legal system," Harris' act of simply telling K.S. not to tell anyone about the sex acts is not enough to sustain a conviction for aggravated intimidation of a victim. Instead, Harris argues there must be some ongoing legal proceeding and a specific intent to prevent the victim from telling law enforcement. Thus, as the State did not present any evidence about who K.S. was not to tell or that Harris intended to thwart "the orderly administration of justice," Harris claims the evidence was insufficient to find him guilty of aggravated intimidation of a victim.

The State disagrees with Harris' claim. First, the State contends that Harris' argument is flawed because aggravated intimidation of a victim does not require some ongoing legal proceeding; instead, Harris was charged with attempting to prevent K.S. from reporting a crime, so no legal proceedings could have been initiated at the time he threatened K.S. Second, Harris told K.S. not to tell anyone that he raped her; the State contends that not telling anyone includes law enforcement. Therefore, the State argues that the evidence was sufficient to permit a rational factfinder to find Harris guilty beyond a reasonable doubt of aggravated intimidation of a victim.

When sufficiency of the evidence is challenged in a criminal case, an appellate court reviews all the evidence in the light most favorable to the State and asks whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

12

*State v. Wilkins*, 305 Kan. 3, 10, 378 P.3d 1082 (2016). In determining whether the evidence was sufficient to support a conviction, an appellate court does not reweigh evidence, resolve evidentiary conflicts, or make credibility determinations. 305 Kan. at 10.

The jury convicted Harris of aggravated intimidation of a victim in violation of K.S.A. 2014 Supp. 21-5909, which provides that:

> "(a) Intimidation of a witness or victim is preventing or dissuading, or attempting to prevent or dissuade, with an intent to vex, annoy, harm or injure in any way another person or an intent to thwart or interfere in any manner with the orderly administration of justice:
>
> . . . .
>
> (2) any witness, victim or person acting on behalf of a victim from:
>
> (A) Making any report of the victimization of a victim to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer . . .
>
> . . . .
>
> "(b) Aggravated intimidation of a witness or victim is intimidation of a witness or victim as defined in subsection (a), when the:
>
> . . . .
>
> (4) witness or victim is under 18 years of age."

To find a defendant guilty of aggravated intimidation of a victim, the defendant must have had the specific intent to prevent or dissuade the victim from reporting a crime or participating in a trial or other proceeding; this intent can be "inferred from the circumstances." *State v. Foster*, No. 113,059, 2016 WL 368090, at *3 (Kan. App. 2016) (unpublished opinion) (citing *State v. Dixon*, 289 Kan. 46, 65, 209 P.3d 675 [2009]). The State also must prove that the threat would have dissuaded a reasonable person in the same situation as the victim from reporting the crime. *State v. Phelps*, 266 Kan. 185, 195, 967 P.2d 304 (1998).

The crime of aggravated intimidation of a victim does not require that there is an ongoing law enforcement investigation or court proceeding; "the crime of aggravated intimidation is complete when the defendant, with the requisite intent, commits an act to intimidate the victim." *State v. Aguirre*, 296 Kan. 99, 106, 290 P.3d 612 (2012). There are no Kansas cases directly addressing whether a generalized threat not to tell anyone is sufficient to prove that a defendant intimidated a victim with the intent to deter the reporting of a crime. However, the Kansas Supreme Court and this court have upheld convictions for aggravated intimidation of a victim in cases with facts similar to this one. For example, in *Aguirre,* our Supreme Court ruled that aggravated intimidation of a victim is not an alternative means crime and upheld a conviction where the defendant told the victim not to tell anyone after he raped her. 296 Kan. at 101-02. However, the court noted that the defendant was not explicitly challenging the sufficiency of the evidence to support the crime. 296 Kan. at 104.

Similarly, in *State v. Perez-Aguilera*, No. 110,983, 2015 WL 1513990, at *7-8 (Kan. App. 2015) (unpublished opinion), this court rejected a defendant's argument that the evidence at trial was insufficient to uphold his conviction for aggravated intimidation of a victim because his conviction "rested solely upon the allegations of a young child, without corroborating evidence." This court held that the victim's testimony that the defendant consistently told her not to tell her mother that he sexually abused her because her mother would not believe her "was legally sufficient for a rational and properly instructed fact finder to have concluded beyond a reasonable doubt that [defendant] was guilty of the crimes of conviction." 2015 WL 1513990, at *8.

*Aguirre* and *Perez-Aguilera* indicate that a generalized threat to the victim not to tell anyone about a crime is sufficient to sustain a conviction for aggravated intimidation of a victim. Here, Harris told K.S. that if she told anyone about the sex acts, he would kill her stepmother and her pets in front of her and he would then kill K.S. It can be inferred from the circumstances that when Harris threatened K.S. not to tell anyone he raped her,

14

Harris specifically intended to dissuade K.S. from reporting his crime to the authorities, including law enforcement. Moreover, this threat would have dissuaded a reasonable person in K.S.'s situation from reporting the crime. We conclude there was sufficient evidence, viewed in the light most favorable to the State, to allow a rational jury to find Harris guilty beyond a reasonable doubt of aggravated intimidation of a victim.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT KIDNAPPING

Harris also argues that there was insufficient evidence to permit a rational jury to find him guilty beyond a reasonable doubt of kidnapping. According to Harris, duct-taping K.S.'s legs—without any other evidence—does not constitute kidnapping, which requires a showing that he took or confined K.S. with the intent to hold her to facilitate flight or the commission of a crime. The State disagrees and argues that K.S.'s testimony at trial and her forensic interview, which was entered into evidence as State's Exhibit 22, was sufficient to enable a rational jury to find that Harris forcibly confined K.S. in order to facilitate the commission of a crime—namely, rape.

As previously discussed, when sufficiency of the evidence in a criminal case is challenged, an appellate court asks whether after reviewing all the evidence in the light most favorable to the State, a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Wilkins*, 305 Kan. at 10. In resolving this issue, an appellate court does not reweigh evidence, resolve evidentiary conflicts, or make credibility determinations. 305 Kan. at 10.

The jury found Harris guilty of kidnapping in violation of K.S.A. 2014 Supp. 21-5408(a)(2), which defines kidnapping as "the taking or confining of any person by force, threat or deception, with the intent to hold such person . . . to facilitate flight or the commission of any crime." The Kansas Supreme Court set out the test for whether the element of "confinement" in order to facilitate the commission of another crime is met in

15

*State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976). The court in *Buggs* held that to constitute kidnapping, the confinement:

> "(a) Must not be slight, inconsequential and merely incidental to the other crime;
>
> "(b) Must not be of the kind inherent in the nature of the other crime; and
>
> "(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 216.

Harris' argument boils down to a claim that duct-taping K.S. does not meet the confinement element of kidnapping under the *Buggs* test. He argues that there was not sufficient evidence introduced at trial to establish that his duct-taping K.S.'s hands and legs was "more than inconsequential or incidental" to raping her, nor was there any evidence that duct-taping a victim is "atypical" of rape.

This court addressed and rejected a similar argument in *State v. Wieland*, No. 89,176, 2004 WL 48167, at *5-6 (Kan. App. 2004) (unpublished opinion), *rev. denied* 277 Kan. 927 (2004). In *Wieland*, the defendant and his wife forcibly entered the victim's home and used duct tape to bind her hands, feet, and mouth. The defendant's wife searched the victim's house, and finding nothing of interest, left and went back to her car. The defendant remained, and while the victim was still bound by the duct tape, he raped her. 2004 WL 48167, at *1. On appeal, the defendant argued that the evidence was insufficient to support his conviction for kidnapping because his use of duct tape to bind the victim's hands and feet was merely incidental to other crimes. 2004 WL 48167, at *5. This court disagreed and, applying *Buggs*, ruled that:

> "*First*, it cannot be concluded that [the victim's] duct tape binding at the hands, feet, and mouth was only slight, inconsequential, and merely incidental to other crimes. *Second*, it is not inherent in the crime of rape and robbery to tie up the victim. *Finally*, tying up [the victim] made the crimes much easier." 2004 WL 48167, at *6.

16

Here, K.S. testified that when she struggled as Harris attempted to rape her, Harris duct-taped her hands behind her back; he also duct-taped her legs apart and to the bathroom counter. These acts were not inconsequential or merely incidental to the rape. Nor is it inherent in the crime of rape to duct-tape the victim's legs apart and to the bathroom counter. Moreover, duct-taping K.S.'s hands behind her back and duct-taping her legs apart made it substantially easier for Harris to rape K.S. We conclude there was sufficient evidence, viewed in the light most favorable to the State, to allow a rational jury to find Harris guilty beyond a reasonable doubt of kidnapping.

LIFETIME PAROLE

Harris' final claim on appeal is that the district court illegally sentenced him to lifetime postrelease supervision. Specifically, Harris argues that lifetime postrelease supervision cannot be imposed in conjunction with an off-grid sentence. Because Harris received an off-grid sentence, he argues that this court must vacate his sentence of lifetime postrelease supervision.

A court can correct an illegal sentence at any time. K.S.A. 22-3504(1). Whether a sentence is illegal is a question of law over which an appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

As noted by the State, Harris' claim fails because he was not sentenced to lifetime postrelease supervision; he was sentenced to lifetime parole. At the sentencing hearing, the district court initially stated that it was imposing a sentence of lifetime postrelease supervision. However, the prosecutor pointed out that Harris' off-grid sentence required the imposition of lifetime parole, rather than lifetime postrelease supervision. The district court agreed and corrected the sentence. The journal entry of judgment correctly states that Harris was sentenced to lifetime parole, not lifetime postrelease supervision.

17

Affirmed.