NOT DESIGNATED FOR PUBLICATION

No. 112,266

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KATLIN ANN WATT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed October 16, 2015. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Sarah E. Washburn*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., HILL, J., and TIMOTHY G. LAHEY, District Judge, assigned.

*Per Curiam*:  Defendant Katlin Watt appeals her conviction for conspiracy to distribute methamphetamine, unlawful use of a communication facility, and operating a motor vehicle without a license. Finding no reversible error, we affirm Watt's convictions.

On October 22, 2013, Laken Criqui and Watt engaged in a Facebook conversation in which they agreed to meet in Emporia where Criqui would buy a gram of methamphetamine from Watt for $100. Based on this conversation, Criqui drove to Emporia from her home in Lebo to meet Watt. Criqui texted Watt upon her arrival in Emporia and they arranged to meet at The Dugout on 12th Avenue. Watt confirmed via text message that she wanted "a bill," which Criqui understood to mean $100. The two women met up at the Dugout where Criqui got into Watt's car and Watt drove to Hardee's to purchase some food. On the way back to the Dugout, Criqui gave $100 to Watt with the expectation that she would receive a gram of methamphetamine in return.

Emporia Police Officer Rob Shipley saw Watt driving her car. Believing she did not have a valid driver's license, he began following Watt's car. He followed it to the Dugout where he saw Watt and Criqui switch seats. Shipley continued to follow the car until Criqui stopped in front of a residence on Cottonwood Street. Shipley was familiar with the residence on Cottonwood Street due to prior incidents there involving methamphetamine possession and sale. The officer pulled in behind Watt's car and activated the lights on his patrol car. Watt got out of the car and headed toward the residence. Shipley asked Watt to come back to his patrol car to speak to him. Watt confirmed that she did not have a driver's license, and according to Shipley, she appeared anxious and indicated more than once that she wanted to go inside the residence to eat her food. After placing Watt under arrest for driving without a license, Shipley spoke to Criqui, who advised of the arrangement with Watt to purchase methamphetamine. No drugs were found on Watt, Criqui, or in Watt's car.

The State subsequently charged Watt with one count each of conspiracy to distribute methamphetamine, unlawful use of a communication facility, and operating a motor vehicle without a license. A jury convicted Watt as charged. The district court

sentenced Watt to a controlling 24-month prison term with a postrelease supervision term of 24 months. Watt timely appeals.

On appeal, Watt contends:  (1) The evidence was insufficient to support her conviction of conspiracy to distribute methamphetamine, (2) the oath sworn to by the jury was coercive and deprived her of her constitutional rights to due process and a fair trial, (3) the district court committed reversible error by instructing the jury about the costs associated with a mistrial, (4) the district court erred in admitting evidence of prior drug activity at the residence on Cottonwood Street, and (5) the release of exhibits to the jury during deliberations violated her constitutional rights to be present and to have the trial judge be present at all critical stages of the trial. Each of these allegations is addressed in turn.

SUFFICIENCY OF THE EVIDENCE

Watt asserts that the evidence was insufficient to support her conviction of conspiracy to distribute methamphetamine because the State failed to prove she committed an overt act in furtherance of the conspiracy.

When the sufficiency of the evidence is challenged in a criminal case, this court reviews all the evidence in the light most favorable to the prosecution to determine whether the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). In determining whether there is sufficient evidence to support a conviction, the appellate court will not reweigh the evidence, resolve evidentiary conflicts or make witness credibility determinations. 299 Kan. at 525.

Conspiracy requires proof that the defendant entered into an agreement with another person to commit or assist in the commission of a crime and that the defendant or

3

the co-conspirator committed an overt act in furtherance of the conspiracy. See K.S.A. 2014 Supp. 21-5302(a).

"An overt act which completes the crime of conspiracy is something apart from the conspiracy. It is an act to effect the object of the conspiracy but it need be neither a criminal act, nor the crime that is the object of the conspiracy. However, it must accompany or follow agreement and must be done in furtherance of the object of the agreement." *State v. Crockett*, 26 Kan. App. 202, Syl. ¶ 4, 987 P.2d 1101 (1999).

Conversations among co-conspirators in forming and planning the conspiracy are not overt acts in furtherance of a conspiracy. 26 Kan. App. 2d 202, Syl. ¶ 5. Instead, "[i]t must be shown the defendant took a step beyond the mere preparation so that some appreciable fragment of the crime was committed." 26 Kan. App. 2d at 204.

In the present case, the State alleged in the complaint/information that Watt had conspired with Criqui to commit the crime of distribution of methamphetamine and that "an overt act, to wit: taking money and agreed upon a price, in furtherance of the conspiracy was committed."

Watt argues that agreeing on a price is merely a part of the conversation in forming and planning a conspiracy and is not an overt act in furtherance of the conspiracy. She further contends that the evidence was insufficient to show that she committed an overt act by taking money from Criqui, as no evidence of drugs or large amounts of cash were found in Watt's possession or that she was even in possession of the $100 Criqui testified she gave to Watt.

The State presented evidence that Watt and Criqui came to an agreement regarding the distribution of methamphetamine by discussing the price, the amount of methamphetamine, and where to meet to make the exchange. Based on this agreement,

4

Criqui drove from Lebo to Emporia to meet Watt. Criqui testified that she gave Watt $100 and expected to receive a gram of methamphetamine in exchange. The exchange of money is an overt act in furtherance of the conspiracy to distribute methamphetamine. Following Watt's arrest, she was found to be in possession of five $20 bills. Watt suggests that the State's evidence is lacking because Criqui testified she gave Watt a $100 bill, not five $20 bills. But it is up to jury to weigh the evidence and assess witness credibility. See *Williams*, 299 Kan. at 525. Viewed in the light most favorable to the prosecution, this evidence is sufficient to prove the existence of an overt act in furtherance of the conspiracy to distribute methamphetamine.

THE JURY'S OATH

Watt next argues that the following oath sworn to by the jury when it was impaneled was unduly coercive and deprived her of constitutional due process rights and right to a fair trial before an impartial jury:

"You and each of you do solemnly swear that you will well and truly try the matters submitted to you in the case now in hearing and a true verdict give according to the law and the evidence, so help you God?"

According to Watt, the language that they jury would give a "true verdict" in the case is unduly coercive because it compels the jury to return a unanimous verdict and does not give it an option to disagree or otherwise fail to return a verdict in the case.

But Watt failed to preserve this argument for appellate review, as there is no indication in the record that Watt objected to the jury's oath. Constitutional grounds for reversal asserted for the first time on appeal are generally not properly before the appellate court for review. *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014). Although there are exceptions to the rule, see *State v. Phillips*, 299 Kan. 479, 493, 325

5

P.3d 1095 (2014), Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) requires that the party raising such an issue explain why it should be considered for the first time on appeal. See *State v. Johnson*, 293 Kan. 959, 964-65, 270 P.3d 1135 (2012) (declining to review argument in part because no explanation given for why exception to preservation argument applied). Watt does not acknowledge her failure to raise this issue below and she has not addressed any of the exceptions to the rule or explained why this court should consider her constitutional argument for the first time on appeal. Accordingly, this court declines to consider the issue. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) ("[W]e are unwilling to ignore [Rule 6.02(a)(5)]'s plain language. Future litigants should consider this a warning and comply with Rule 6.02(a)(5) by explaining why an issue is properly before the court if it was not raised below—or risk a ruling that an issue improperly briefed will be deemed waived or abandoned.").

THE JURY INSTRUCTION ABOUT THE COSTS OF A MISTRIAL

Watt does not challenge any of the written instructions the district court provided to the jury prior to deliberations. Rather, she challenges a preliminary instruction the district court gave to the jury immediately after the jury was sworn. The judge instructed the jurors that they must not attempt to obtain information about the case other than that which they heard and saw in the courtroom. He told them that they were not allowed to communicate with anyone about the case or their service as jurors. The judge acknowledged that these restrictions might affect the jurors' normal activities and explained the reasoning behind the rules. The judge then stated,

"You must not engage in any activity, or be exposed to any information that might unfairly affect the outcome of the case. Any juror who violates these restrictions I have explained to you, jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. *As you can imagine, a*

6

*mistrial is a tremendous expense and inconvenience to the parties, the Court, and the taxpayers."* (Emphasis added).

The State responds that the district court gave proper jury instructions to which Watt did not object and that the instruction, when taken in context, was not clearly erroneous.

> "'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)' [Citation omitted.]" *Williams*, 299 Kan. at 551.

A party cannot claim error in the district court's giving or failing to give a jury instruction unless (1) the party objects before the jury retired, stating distinctly the matter to which the party objects and the grounds for the objection; or (2) the instruction or failure to give instruction was clearly erroneous. K.S.A. 2014 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). Where a party fails to object at trial to the giving of an instruction, an appellate court reviews only for clear error; in other words, ""the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal."' [Citation omitted.]" See *State v. Brown*, 300 Kan. 542, 555, 331 P.3d 781 (2014).

*Reviewability*

We must first consider the reviewability of the issue from both jurisdiction and preservation viewpoints. Watt acknowledges that she did not object at trial to the jury instruction she now complains about on appeal, but asserts that she may nevertheless raise the issue for the first time on appeal. When a party fails to object or request a jury instruction at trial, appellate courts may consider the issue but review is limited to determining whether the instruction was clearly erroneous. 300 Kan. 555.

Watt argues that this court should review the instruction for harmless error, not clear error, because defense counsel was never given an opportunity to object to the instruction outside the presence of the jury. It is true the record does not reflect that the court offered defendant an opportunity to object before the instruction was given. However, K.S.A. 2014 Supp. 22-3414(3) does not require a contemporaneous objection to an instruction, it only requires an objection "before the jury retires to consider its verdict." We find the defendant had the opportunity to make her objection outside the presence of the jury throughout the trial as well as during the review of the written jury instructions, but she failed to do so. Because Watt failed to object to the instruction before the jury began deliberations, we will review the instruction for clear error.

*Legal propriety*

Next, we must determine whether the district court's jury instruction was legally appropriate. Watt contends that the instruction is erroneous and cites *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009) as authority. In *Salts*, our Supreme Court held that telling a jury that "[a]nother trial would be a burden on both sides"—also referred to as an *Allen* instruction—was misleading, inaccurate, confusing, and constituted error.

8

Following *Salts*, Kansas appellate courts consistently have held that using this language is error. See, *e.g., State v. Gleason*, 299 Kan. 1127, 1179-80, 329 P.3d 1102 (2014) (instruction that included the phrase "another trial would be a burden on both sides" was erroneous), *cert. granted* 135 S. Ct. 1698 (2015); *State v. King*, 297 Kan. 955, 984-85, 305 P.3d 641 (2013) (instructing the jury that a second trial would be a "heavy burden on both sides" was erroneous); *State v. Parks*, 294 Kan. 785, 801, 280 P.3d 766 (2012) (concluding the language "[a]nother trial would be a burden on both sides" is error).

The State argues the instruction was not erroneous in light of the context in which it was given, but it does not explain how the context makes the language legally appropriate. Under the rationale of *Salts* and its progeny, the district court's instruction to the jury that another trial would be a "tremendous expense and inconvenience" constitutes legal error.

*Reversibility*

Finally, because the district court erred, this court must determine whether the error requires reversal. Given Watt's failure to object to the instruction, our review is limited to determining whether the instruction was clearly erroneous, *i.e.*, whether we are "'"firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."' [Citation omitted.]" *Brown*, 300 Kan. at 555.

Although the district court erred by instructing the jury about the costs associated with a mistrial, the instruction was given in the context of reminding the jurors how important it was that they not be influenced by outside information. The instruction contained no reference to the jury's failure to reach a unanimous verdict. Watt did not object to the instruction and filed no posttrial motion challenging the instruction. The burden is on Watt to establish the degree of prejudice necessary for reversal. See 300

9

Kan. at 555. Based on the record in its entirety, this court is not firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. Consequently, we find the district court's jury instruction was not clearly erroneous.

EVIDENCE OF PREVIOUS DRUG ACTIVITY

Next, Watt contends the district court erred in admitting evidence of previous drug activity at the residence on Cottonwood Street.

We review a district court's decision to admit or exclude evidence under a multi-step process. The first step is to determine whether the evidence is relevant. *State v. Carapezza*, 286 Kan. 992, 997, 191 P.3d 256 (2008). All relevant evidence is admissible unless prohibited by statute. See K.S.A. 60-407(f). Relevant evidence is any "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). This definition encompasses two elements: a materiality element and a probative element. Standards of review for each element vary.

Evidence is material when the fact it supports is in dispute or in issue in the case. Review for materiality is de novo. *Bowen*, 299 Kan. at 348. Evidence is probative if it has any tendency to prove any material fact. *State v. Lowrance*, 298 Kan. 274, 289, 312 P.3d 328 (2013). An appellate court reviews the district court's assessment of the probative value of evidence under an abuse of discretion standard. *State v. Huddleston*, 298 Kan. 941, 960, 318 P.3d 140 (2014). Even if evidence is relevant, a district court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. *State v. Miller*, 284 Kan. 682, 690, 163 P.3d 267 (2007). We review the determination of whether evidence is unduly prejudicial under an abuse of discretion standard. *State v. Reid*, 286 Kan. 494, 512, 186 P.3d 713 (2008).

Prior to trial, defense counsel filed a motion in limine seeking to prevent the State from introducing evidence that the residence on Cottonwood Street "is, or was, a known methamphetamine house or that arrests for sale, possession, or manufacture of methamphetamine had been made at that location." In support, defense counsel noted that no drugs were found on Watt or Criqui or in Watt's car. The State opposed the motion on the grounds that such evidence was relevant and probative, and that Watt had failed to allege sufficient prejudice. Outside the presence of the jury, the district court heard testimony from Officer Shipley that he was familiar with the residence on Cottonwood Street because Kelly Caldwell, a resident at that address, had been the target of narcotics investigations and he had arrested Caldwell for the sale and possession of methamphetamine. Shipley stated that Caldwell lived there on the date of Watt's arrest. Shipley had not personally seen Watt at the residence, but had received information that she had been known to associate there. Shipley further testified that he became concerned about alleged drug activity in this case after Watt exited the car and tried to go inside the residence and continued to ask if she could go inside. After hearing Shipley's testimony, the district court found that evidence as to Shipley's knowledge about the residence on Cottonwood Street was relevant to an understanding of his action and his later interrogation of Criqui.

The trial judge ruled that Shipley could testify that he was concerned about the car stopping at that location due to his knowledge about prior illegal transactions there. The district court, however, prohibited any reference to the residence as a "crack house" or other comments along that line. Consistent with his proffered testimony, Shipley later testified before a jury that he had prior dealings with sale and possession of methamphetamine at the residence on Cottonwood Street, but specifically stated that none of these prior dealings involved Watt.

*Relevance*

As stated above, relevant evidence is any "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). Evidence is material when the fact it supports is in dispute or in issue in the case. *Bowen*, 299 Kan. at 348. Evidence is probative if it has any tendency to prove any material fact. *Lowrance*, 298 Kan. at 289.

Watt argues the evidence that prior drug activity occurred at the residence on Cottonwood Street was not relevant because there was no material or logical connection between the prior drug activity and the inference that she intended to complete a drug sale there. Watt's argument is without merit. Evidence of the prior drug activity at the residence on Cottonwood Street was material to the disputed issue of whether Watt intended to sell drugs to Criqui. Evidence that they drove to a residence that had a known history of prior drug activity was relevant to determining Watt's intent, especially given that no drugs were found on Watt, Criqui, or in Watt's car.

*Prejudice*

Watt argues that even if the evidence was relevant, it should have been excluded because the potential for undue prejudice far outweighed the probative value of the evidence given that there was no evidence linking Watt to the previous drug activity at the residence on Cottonwood Street. We disagree.

First, any potential prejudice was mitigated by the district court's ruling that the State could not refer to the residence as a "crack house" or make any similar remarks. Moreover, the jury was repeatedly informed that Watt was not involved in the prior drug activity at the residence. Criqui testified that she and Watt made a mutual decision to stop at the residence. Criqui stated that she had been there three or four times previously to purchase methamphetamine, but specifically stated that Watt had not been with her or at

12

the residence on these other occasions and that Watt only appeared to be "a little bit" familiar with the location. And in response to the State's questioning on direct examination, Shipley testified that Watt was not involved in the prior drug activity he was aware of at the residence, thus mitigating the potential prejudice.

Evidence of the prior drug activity at the residence on Cottonwood Street was relevant, and its probative value was not outweighed by its potential for producing undue prejudice. The district court did not err in admitting the evidence.

### ALLOWING EXHIBITS IN THE JURY ROOM DURING DELIBERATIONS

Watt next argues that the district court violated her constitutional and statutory rights to be present and have the trial judge be present at all critical stages of trial when it allowed the jury to view trial exhibits outside her presence. Watt's arguments raise an issue of law over which this court exercises unlimited review. *State v. Verser*, 299 Kan. 776, 787, 326 P.3d 1046 (2014).

At trial, the district court admitted several photographs of text messages between Criqui and Watt. Prior to the deliberations, the district court informed the jurors that "all of the exhibits which were admitted" would be delivered to the jury room for their review. Although Watt did not object to the district court's release of the exhibits to the jury, this court may review her argument violated her right to be present. See 299 Kan. at 788 (the right to be present is personal and cannot be waived by counsel's failure to object at trial).

At the time of Watt's trial, K.S.A. 22-3420(3) arguably granted the defendant a right to be present when the jury sought to review an exhibit. It required the jury, when it desired to be informed as to any part of the evidence, to request such review and then the "evidence shall be read or exhibited to them in the presence of the defendant." But K.S.A.

13

2014 Supp. 22-3420(c) now provides: "In the court's discretion, upon the jury's retiring for deliberation, the jury may take any admitted exhibits into the jury room, where they may review them without further permission from the court."

Although the statute was amended after Watt's trial, it specifically provides that it "shall be construed and applied retroactively." K.S.A. 2014 Supp. 22-3420(f). Thus, Watt's claim of statutory error fails.

As support for her constitutional claim that a defendant has the right to be present when evidence is exhibited to a jury—even after the jury has begun deliberations—Watt relied on *State v. Herbel*, 296 Kan. 1101, 299 P.3d 292 (2013). In *Herbel*, the defendant was on trial for sex crimes against a child. He had given a videotaped interview to law enforcement officers that contained highly incriminating admissions. He also provided a similar written statement. The prosecution played the videotape during its case against the defendant, and both the videotape and the written statement were admitted into evidence. During deliberations, the jurors wanted to review parts of the videotaped interview. 296 Kan. at 1104-06. The district court met with the jurors in the courtroom and asked the presiding jury to describe what they wanted to review. Those portions of the interview were replayed for the jurors. The district court then asked the presiding juror if the replay was sufficient or if there were other portions of the interview they wished to see. The presiding juror indicated the jurors had seen what they needed. The jury returned with a split verdict about 25 minutes later convicting the defendant on one count of rape and one count of aggravated indecent liberties with a child while acquitting him of a second count of rape. 296 Kan. at 110-607.

On appeal, the defendant challenged the district court's handling of the jurors' request to view portions of the videotaped statement. At the outset of its legal analysis, the Kansas Supreme Court noted that the record was silent as to whether the defendant or his counsel was present during the district court's communication with the jurors about

14

the videotaped interview and the replay of the requested portions of the interview. 296 Kan. at 1107. Without an affirmative statement on the record that the defendant was present or some equivalent indication, the court concluded the defendant was absent, determined the interaction between the district court and the jury to be a critical stage in the proceedings, and found the interaction tantamount to constitutional error. 296 Kan. at 1109-10. Applying the constitutional harmless analysis, however, the court found the error harmless beyond a reasonable doubt. 296 Kan. 1115.

The *Herbel* court specifically analyzed the constitutional violation based on the district court's communication with the jurors, not on the actual display of the videotape outside of the defendant's presence. 296 Kan. at 1109. Unlike *Herbel*, the record here does not show any communication between the district court and the deliberating jurors outside Watt's presence and Watt does not allege any such communication. The record reflects that all meaningful communication about the photographs occurred in open court in Watt's presence. Under these circumstances, the jurors' review of the trial exhibits was not a critical stage of the proceeding at which Watt had a constitutional right to be present personally or through counsel. See *State v. Fenton*, 228 Kan. 658, 667, 620 P.3d 813 (1980) ("Once a case is submitted to the jury for deliberations, the jury is ordinarily given the exhibits to take into the jury room where the jurors can examine the exhibits as many times as they desire.").

Watt also argues that allowing the jurors to take the exhibits to the jury room constituted structural error because it violated her constitutional right to have an impartial judge present at all critical stages of trial. This claim is without merit. Watt's constitutional right to an impartial judge was not violated because no communication or interaction occurred between the district court and the deliberating jury outside of Watt's presence. All information and communication surrounding the photographic evidence was imparted in open court. Although the jurors were permitted to examine the exhibits in the jury room, the trial judge is never allowed to be present during jury deliberations.

15

Simply put, Watt has not presented this court with any valid basis for holding that the release of the exhibits to the jury during deliberations constituted a violation of her constitutional rights to be present and to have the trial judge present at all critical stages of the trial.

Affirmed.