NOT DESIGNATED FOR PUBLICATION

No. 112,588

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LUIS CABRERA-SANCHEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed January 15, 2016. Affirmed in part, reversed in part, and vacated in part.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Logan McRae*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., ATCHESON, J., and WALKER, S.J.

*Per Curiam*:  A jury convicted Luis Cabrera-Sanchez of the rape of one of his girlfriend's daughters and aggravated indecent liberties with a child with her other daughter. In this direct appeal, Cabrera-Sanchez argues he should get a new trial for two reasons. First, he complains the trial court erroneously admitted evidence of other uncharged instances of Cabrera-Sanchez' sexual misconduct toward the girls. Second, Cabrera-Sanchez complains the prosecutor improperly shifted the burden of proof to him and referred to evidence not in the record during her closing argument. After carefully examining the proceedings and the evidence, we find that Cabrera-Sanchez has failed to

1

point to any possible errors that deprived him of a fair trial. See *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013) ("As we have recognized for decades, '[a] defendant is entitled to a *fair* trial but not a perfect one[.]'" [quoting *State v. Bly*, 215 Kan. 168, 178, 523 P.2d 397 (1974)]). We, therefore, affirm his convictions.

Although noted by neither party, the trial court improperly imposed lifetime postrelease supervision on Cabrera-Sanchez. Because Cabrera-Sanchez had received an off-grid indeterminate (concurrent hard 25) life sentence, he actually will be on parole should he ever be released from prison. We fix this problem by vacating the order imposing lifetime postrelease supervision.

FACTS

On March 21, 2013, A.R. (mother) "had a bad feeling" when she left for work after her 7-year-old daughter, I.S., asked her not to go. This was the first time A.R. left I.S. and her 8-year-old sister, J.S., alone in the care of her 26-year-old boyfriend Luis Cabrera-Sanchez, who had lived with A.R., her son, and the girls for 3 months.

Three days later, A.R. was brushing I.S.'s hair when she asked her daughters whether Cabrera-Sanchez had ever touched them in their private areas; both responded that he had. A.R., who was sexually abused when she was 12, immediately reported the girls' allegations to the police.

During the ensuing investigation, trained social workers separately interviewed the girls about their sexual abuse allegations at the Sunflower House, a children's advocacy center in Kansas City. During those videotaped interviews, the girls reported several instances of inappropriate behaviors or touching by Cabrera-Sanchez. Specifically, J.S. reported that Cabrera-Sanchez "'touched her everywhere'" with his hand on top of her clothes while she was watching television in her bedroom and her mother was at work.

2

Using an anatomical drawing, J.S. eventually narrowed the area he touched to her vagina. I.S. similarly reported being touched by Cabrera-Sanchez. However, she said he touched her with his hand on both the outside and inside of her vagina and also touched her breast. I.S. also said Cabrera-Sanchez showed her his penis more than once. Each sister said she saw Cabrera-Sanchez touch the other.

When questioned by the police, Cabrera-Sanchez denied the girls' allegations. He later said he might have inadvertently touched their private parts when they were wrestling or he was tickling them in A.R.'s presence.

The State charged Cabrera-Sanchez with the rape of I.S. and aggravated indecent liberties with J.S., both off-grid felonies under Jessica's Law. The trial court continued the initial trial date after granting the prosecutor's belated motion under K.S.A. 2014 Supp. 60-455 to admit as evidence the improper touching incidents the girls described but which the State chose not to charge. We discuss that ruling further in our analysis of the points on appeal.

The case eventually proceeded to a 3-day jury trial. In support of its case, the State presented the testimony of A.R., the girls, the forensic interviewers, the investigating officers, and others involved in the investigation. The jury also viewed the girls' videotaped interviews and anatomical drawings. Cabrera-Sanchez testified in his own defense, wholly denying that he ever touched the girls inappropriately or otherwise did anything improper with them. Cabrera-Sanchez also presented the testimony of Dr. Robert Barnett, a licensed clinical psychologist, who questioned whether the way the girls were interviewed may have prompted false accusations of sexual misconduct. Because evidence of more than one instance of digital penetration came in pursuant to the State's K.S.A. 2014 Supp. 60-455 motion, the court instructed the jury that the rape charge concerned an "incident on the sofa."

The jury found Cabrera-Sanchez guilty as charged. Cabrera-Sanchez moved for a new trial, in part based on the admission of the evidence of the uncharged rape of I.S. in the bathtub. Following a hearing, the trial court denied that motion. The court then sentenced Cabrera-Sanchez to concurrent presumptive life sentences under Jessica's Law without the possibility of parole for 25 years. This is Cabrera-Sanchez' timely direct appeal.

ANALYSIS

*Admission of propensity evidence*

In his first issue, Cabrera-Sanchez complains he was denied a fair trial as a result of what he characterizes as the trial court's erroneous admission of evidence of his other instances of sexual misconduct toward the girls. The State responds that the evidence was properly admitted under K.S.A. 2014 Supp. 60-455(d).

In its K.S.A. 2014 Supp. 60-455 motion, the State sought permission to admit several incidents of uncharged crimes or bad acts committed by Cabrera-Sanchez (the other-bad-acts evidence). Specifically, the State asked to admit evidence that Cabrera-Sanchez unnecessarily watched the girls while they bathed; he exposed his penis to I.S. more than once; he touched I.S.'s breasts; and he also touched I.S. "on the inside of her vagina" while she was bathing (the bathtub incident). I.S. apparently did not tell anyone about the bathtub incident until after she was questioned about the touching incident on the brown couch that led to the rape charge. After I.S. told A.R. about it and A.R. found a pink discharge in I.S.'s underwear, A.R. took I.S. to Children's Mercy Hospital for a sexual assault examination. The State, however, apparently did not learn about the bathtub incident until just before trial.

4

K.S.A. 2014 Supp. 60-455(d) exclusively governs the admission of prior-bad-act evidence in sex crime prosecutions and does not include limitations on the purpose for which propensity evidence otherwise can be considered, as provided in subsection (b). Rather, K.S.A. 2014 Supp. 60-455(d) broadly "permits evidence of other acts or offenses of sexual misconduct to be admitted in such a prosecution 'for its bearing on any matter to which it is relevant and probative.'" *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013) (quoting K.S.A. 2009 Supp. 60-455[d]). As our Supreme Court has recognized in applying K.S.A. 2014 Supp. 60-455(d):

> "In sex offense cases, propensity evidence is material, *i.e.*, has a 'legitimate and effective bearing' on defendants' guilt. See [*State v.*] *Remmert*, 298 Kan. [621,] 627-28[, 316 P.3d 154 (2014)] (prior diversion for sex crime against young girl relevant to guilt in prosecution for sex crime against young boy); see also [*State v.*] *Spear*, 297 Kan. [780,] 789[, 304 P.3d 1246 (2013)] (victim's prior molestation allegations against defendant would have been admissible propensity evidence in later prosecution for aggravated indecent liberties involving same victim); *Prine*, 297 Kan. at 480 (defendant's prior sexual abuse of daughter and younger sister admissible propensity evidence in prosecution for sexual abuse against friend's daughter)." *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014).

In short, in a prosecution for a sex offense, K.S.A. 2014 Supp. 60-455(d) generally would permit the State to admit other instances of the defendant's sexual misconduct as bearing on propensity in addition to other grounds on which it might be relevant. That is an exceptionally wide berth. Nonetheless, the Kansas Supreme Court has suggested that evidence otherwise admissible under K.S.A. 2014 Supp. 60-455(d) should be excluded if its probative value is substantially outweighed by its impermissibly prejudicial effect. See *Bowen*, 299 Kan. at 349-50; *Prine*, 297 Kan. at 478. The district court's balancing of probative value with undue prejudice entails an exercise of judicial discretion and is reviewed on appeal for abuse of that discretion. See *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013) (appellate court reviews trial court's weighing of probative

5

value and prejudice for abuse of discretion). A judicial action constitutes an abuse of discretion if the action: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

The Kansas Supreme Court has cited with approval several factors for balancing the probative value of propensity evidence in sexual abuse cases against its potential for unfair prejudice, including:

> "'1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct. [Citations omitted].' *United States v. Benally*, 500 F.3d 1085, 1090-91 (10th Cir. 2007) (cited with approval in *Prine*, 297 Kan. at 478)." *Bowen*, 299 Kan. at 350.

This case presents a potentially challenging application of those criteria. The 60-455(d) evidence derives from the same course of conduct between the defendant and the victims as the charged offenses. And the 60-455(d) evidence is no more clearly or in any way independently proved apart from the offenses. That is, both the 60-455(d) evidence and the crimes essentially depend on a credibility determination pitting the victims against the defendant with little else materially corroborating either version. Rather than plumb the ramifications of that evidentiary puzzle, we take an easy way out and simply assume without deciding that the undue prejudice of the 60-455(d) evidence outweighed its probative value in this circumstance.

Our assumption, however, affords Cabrera-Sanchez no relief in and of itself. He must still demonstrate the assumed error caused sufficient prejudice to deprive him of a fair trial. See *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). In other words, harmless errors can and will be excused. See K.S.A. 2014 Supp. 60-261.

Cabrera-Sanchez frames his argument regarding error by suggesting the jurors may have been disposed to convict him because the State declined to file additional charges against him. We find his position unpersuasive. He first characterizes the evidence against him as "far from overwhelming." In doing so, he briefly recounts the evidence in a light most favorable to him, highlighting in particular the lack of evidence of physical injury to the girls and his expert's discussion of the high risk of suggestion and expectation bias in their interviews at Sunflower House. Cabrera-Sanchez then proclaims the evidence of the "uncharged touching in the bathtub was not materially different from evidence supporting the charged offenses," which he says "encouraged the jury to conclude [he] was receiving some type of leniency from the State."

Ultimately, as we have indicated, the case came down to a credibility determination. The jurors saw the victims and Cabrera-Sanchez as they testified both on direct and cross-examination. As this court has said:

> "Sorting out testimonial inconsistencies and evaluating credibility is a function uniquely entrusted to jurors. And '[t]he judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement.' *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 (2012), *rev. denied* 298 Kan. 1204 (2013) (Atcheson, J., dissenting). The ability of the jurors to observe witnesses as they testify is integral to that evaluation. *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008). Appellate courts have no comparable vantage point when they read a trial transcript, and that is precisely why they do not make credibility

determinations." *State v. Franco*, 49 Kan. App. 2d 924, 936-37, 319 P.3d 551 (2014), *rev. denied* 301 Kan. ___ (April 29, 2015).

The jurors' evaluation of the comparative credibility of the victims and Cabrera-Sanchez drove the verdict in this case—not an unsubstantiated theory that those jurors somehow thought Cabrera-Sanchez should have faced more charges or harsher punishment so they simply convicted him of everything the Stated had charged. Cabrera-Sanchez does not argue the 60-455(d) evidence skewed the jurors' credibility determination. His argument rests on an implicit premise the jurors convicted him of those crimes not only because they thought he was guilty of them but also because they thought he was guilty of additional crimes against these victims that had not been charged. We fail to see prejudicial error lurking there. Moreover, the district court instructed the jurors that their only concern should be determining whether Cabrera-Sanchez was guilty or not guilty and that they should not otherwise consider the disposition of the case. See PIK Crim. 4th 50.090. The instruction undercuts the premise of Cabrera-Sanchez' argument, and we presume jurors follow the district court's instructions absent a clear indications to the contrary. *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010). Nothing—clear or otherwise—suggests the jurors disregarded that instruction.

We find Cabrera-Sanchez has failed to show any prejudicial error stemming from the admission of the K.S.A. 2014 Supp. 60-455(d) evidence. We, therefore, reject the point.

*The limiting instruction*

In a related argument, Cabrera-Sanchez takes issue with the limiting instruction given to the jurors regarding the 60-455(d) evidence. That instruction read simply: "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for any relevant

purpose." Tying back to the discussion above, Cabrera-Sanchez complains this instruction was erroneous because it broadly permitted the jurors to determine for what purpose this evidence was relevant rather than limiting them to considering the evidence to prove motive or lack of mistake or accident—the two purposes for which the district court expressly found the evidence relevant. According to Cabrera-Sanchez, because the court instructed the jurors that they could consider the other-bad-acts evidence to support any inference they found "relevant," they "could easily have concluded that [he] was given a free pass for committing a number of uncharged crimes and should be convicted of the charged offenses regardless of the strength of the State's case." This is same argument Cabrera-Sanchez offered to show the 60-455(d) evidence to be prejudicial.

Apart from the deficiency of that argument in establishing prejudice, Cabrera-Sanchez has a more basic problem on this score. He asked the district court to give this instruction: "Evidence has been admitted alleging other instances of misconduct that were not charged, such as an incident in the bathtub, the touching of a child's breast and indecent exposure. *This evidence may only be considered for its bearing on any matter to which it is relevant and probative.*" (Emphasis added.) On appeal, Cabrera-Sanchez complains about that part of the district court's instruction corresponding to the last sentence of his proffered instruction. Although the two instructions are worded slightly differently in that respect, they both convey the same direction to the jury. So Cabrera-Sanchez is now effectively taking issue with what he asked the district court to do and trying to turn the district court's comparable instruction into reversible error.

That was an invited error foreclosing appellate review. See *State v. Jones*, 295 Kan. 804, 811-12, 286 P.3d 562 (2012) (appellate court need not consider whether the giving of or failure to give a jury instruction was clearly erroneous where the defendant invites the error by requesting the instruction); *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011) ("When defendant's requested instruction is given to the jury, the defendant cannot complain the requested instruction was error on appeal."); see also *State*

9

*v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982) ("Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review.").

Even if the invited error rule were inapplicable, we find no material error in giving a limiting instruction permitting the jurors to consider evidence under K.S.A. 2014 Supp. 60-455(d) for any relevant purpose. Although the instruction may not have been especially helpful to the jurors, Cabrera-Sanchez was not entitled to a limiting instruction with regard to the other-bad-acts evidence in a prosecution for the sex offenses outlined in K.S.A. 2014 Supp. 60-455(d). As our Supreme Court explained in *Prine*, the "judicially created safeguard" of a limiting instruction where propensity evidence is admitted became obsolete in cases such as this because

> "[i]n a sex crime prosecution governed by new subsection (d) [of K.S.A. 2009 Supp. 60-455], there remains no reason to tell jurors to ignore the bearing prior sexual misconduct may have on the defendant's propensity to commit the charged crime or crimes. If other sex crimes or civil wrongs are relevant, *i.e.*, material and probative of propensity, the jury may consider them for that." 297 Kan. at 479.

This is all that the court told the jurors in the limiting instruction that it gave them. Accordingly, even if we were to find error, it would be harmless.

We hold that Cabrera-Sanchez is not entitled to the new trial he seeks as a result of the admission of the other-bad-acts evidence.

*The prosecutor's closing argument*

In his second issue on appeal, Cabrera-Sanchez complains he was deprived a fair trial by the prosecutor's misconduct during closing argument. The State responds that when considered in proper context, the prosecutor's argument was proper.

*Standard of review*

The parties agree on the well-known, two-step review process this court applies in considering Cabrera-Sanchez' allegations of prosecutorial misconduct:

> "'First, an appellate court determines whether there was misconduct, *i.e.*, whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, if misconduct is found, the appellate court determines whether those comments compel reversal, *i.e.*, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial.' [Citation omitted.]" *State v. Knox*, 301 Kan. 671, 682, 347 P.3d 656 (2015).

As part of the second step of the two-step analysis, the appellate court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether the misconduct showed ill will on the prosecutor's part, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *State v. Williams*, 299 Kan. 509, 540, 324 P.3d 1078 (2014). None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 2014 Supp. 60-261 and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), have been met. *Williams*, 299 Kan. at 540-41.

Cabrera-Sanchez admittedly did not object to the comments he complains about on appeal. This does not, however, preclude this court from reviewing his complaints about the prosecutor's closing argument. See *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200, *cert. denied* 133 S. Ct. 529 (2012) (appellate courts can review claim of prosecutorial misconduct during closing arguments even where contemporaneous objection is lacking).

*Improper shift in the burden of proof*

Cabrera-Sanchez complains about two portions of the prosecutor's closing argument.

First, he complains specifically about the following emphasized comments by the prosecutor. But we offer a fuller context for the challenged statements within the prosecutor's overall argument. See *State v. Naputi*, 293 Kan. 55, 59, 260 P.3d 86 (2011) (appellate court must "review challenged remarks in their full context").

> "*There's no allegation that anyone else besides the defendant did this to* [*I.S.*]. She never mentioned anyone else possibly having molested her. She was asked and she said no, it was [Cabrera-Sanchez]. She never alleged any other kind of contact other than digital penetration. She never said that there was penile penetration, she never said he penetrated her with an object. She only said digital penetration.
> "So really once you take that element into consideration too, you just have to determine whether or not it happened because the allegations that are there are what [I.S.] said happened, that it was digital penetration with the defendant and herself.
> "You can do the same thing with count two. You look at that, and it's that the defendant engaged in lewd fondling or touching of [J.S.] with the intent to arouse sexual desire of the child or the defendant. *Again, some of this is even undisputed. We know that this incident involved* [*J.S.*] *and the defendant. There is no testimony given that this could have been anyone else during this time period.* She didn't say that anyone else had ever touched her before, and again she was asked that." (Emphasis added.)

Cabrera-Sanchez analogizes the statements to the questions a prosecutor posed to a jury about whether there was """any evidence""" that the rape as alleged by the victim """didn't happen,""" which questions our Supreme Court held were improper attempts to shift the burden of proof to the defendant in *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004).

12

Here, the State responds that when considered in their proper context, the comments were a proper part of the prosecutor's explanation of the evidence and distinguishes *Tosh*. In support, the State notes that the prosecutor made these statements as she highlighted the elements of the crime that were not in issue, such as identity or the type of penetration. Rather than commenting on missing evidence or shifting the burden, the State argues the prosecutor was simply explaining that the "crux of the jury's decision was who to believe." Thus, the State claims this case is less like *Tosh*, where similar comments about a lack of evidence supporting the defendant's defense compounded with other instances of prosecutorial misconduct, and more similar to other decisions that have found similar comments by prosecutors on a lack of evidence were not misconduct. This court recently summarized some of those decisions in *State v. Jones*, No. 111,148, 2015 WL 1636728, at *5-7 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. ___ (September 23, 2015), as follows:

- In *State v. Stone*, 291 Kan. 13, 16, 237 P.3d 1229 (2010), the prosecutor commented in closing argument that the defendant, who generally denied the child victim's allegations underlying a charge of aggravated indecent liberties, had "'"two huge obstacles he has to overcome to present any kind of a credible defense."'" Our Supreme Court held these comments fell within a prosecutor's considerable latitude to comment on the weakness of the asserted defense and sufficiently varied from the argumentative questions the prosecutor posed to the jury in *Tosh*. *Jones*, 2015 WL 1636728, at *5 (citing *Stone*, 291 Kan. at 19).

- In *State v. Burden*, 30 Kan. App. 2d 690, 703, 46 P.3d 570 (2002), *rev'd on other grounds* 275 Kan. 934, 69 P.3d 1120 (2003), this court held that a prosecutor's argument that "'the most overwhelming thing that the defense cannot overcome is the physical evidence that corroborates [the victim's] initial statements'" was within the "'considerable latitude granted to prosecutors to comment on the weakness of defenses'" in part because the prosecutor had also referred the jury to

13

the court's instruction that the State had the burden of proof. *Jones*, 2015 WL 1636728, at \*6.

- In *State v. Williams*, 299 Kan. 911, 329 P.3d 400 (2014), our Supreme Court cited various cases in which the court held a prosecutor does not shift the burden of proof by pointing out a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case, including: "'*State v. Wilson*, 295 Kan. 605, 623-25, 289 P.3d 1082 (2012) (holding prosecutor's arguments that defendant had no explanation for his DNA found near crime scene did not improperly shift burden of proof; rather, it was comment on efficacy of defense and pointed jurors to lack of evidence supporting defendant's version of events); *State v. Cosby*, 293 Kan. 121, 135-37, 262 P.3d 285 (2011) (finding prosecutor's statements asking jury if it had heard any evidence that suggested witness' testimony was wrong did not improperly shift burden of proof because prosecutor was only commenting generally on defendant's failure to rebut witness' testimony and not commenting on defendant's failure to testily); [and] [*State v.*] *Duong*, 292 Kan. [824] at 832-33, 257 P.3d 309 [2011] (holding prosecutor's arguments questioning defendant's failure to present evidence of misidentification did not improperly shift burden of proof because prosecutor did not call upon defense to disprove crime's occurrence but rather pointed out that evidence supporting defense theory was thin).' [*Williams*,] 299 Kan. at 940." *Jones*, 2015 WL 1636728, at \* 6.

Applying this reasoning to the prosecutor's argument about which Cabrera-Sanchez now complains, we agree with the State's analysis. When read in isolation, the prosecutor's comments might seem improperly argumentative and, thus, a kin to the questions deemed improper in *Tosh*. In context, however, the message the prosecutor conveyed to the jury was not that Cabrera-Sanchez failed to disprove the State's case. Rather, the prosecutor was simply taking the jury through each of the elements that it had

to prove, noting along the way that the evidence in support of the girls' allegations was stronger than Cabrera-Sanchez' general denial and his suggestion that the girls made up the allegations after being coached by their mother or the forensic interviewers. The district court instructed the jurors that the State had the burden of proof, and the prosecutor reminded the jurors of this burden in closing. The State's argument did not ask them to shift that burden to Cabrera-Sanchez. We find no misconduct in the State's remarks.

*Comments on facts not in evidence to inflame the passions or prejudices of the jury*

Cabrera-Sanchez also complains the prosecutor improperly inflamed the jury's passion or prejudice by referring to facts not in evidence when she told the jury:

"The bottom line is that over those four days in March, March 18th through March 22nd, the defendant . . . abused [J.S.] and [I.S.] more than one time each. It wasn't chance, it wasn't an accident and it wasn't a mistake. *Over those four days the sexual abuse didn't just happen once. It became the norm, it became the defendant's practice, it became the defendant's routine. His behavior escalated, started out with him getting in bed with [J.S.], then he touched [I.S.'s] breasts on the outside of her clothes, then he exposed his penis, then he touched [J.S.] over her clothes and he eventually raped [I.S.] with his fingers.*" (Emphasis added.)

Cabrera-Sanchez contends the State presented no evidence to support the prosecutor's argument that he "carefully planned an escalating system of 'routine' sexual abuse." Instead, he argues the girls' "allegations were vague and random, containing no evidence of a timeline or escalation in the illegal conduct by" Cabrera-Sanchez. So he asserts the argument sequencing the events lacked factual support and the inference that he planned a course of increasingly intrusive and offensive sexual conduct directed at each victim created an impermissible passion or prejudice among the jurors to convict.

15

There is no dispute that a prosecutor commits misconduct by discussing facts not in evidence during closing argument. See *Knox*, 301 Kan. at 685. Here, Cabrera-Sanchez arguably makes something of a fair observation: The victims' testimony did not strictly establish a chronology of the sexual contact over the course of the week. And it might be a rhetorical flourish to characterize the sexual misconduct as a "norm," "practice," or "routine." At the same time, however, the prosecutor did not refer to events outside the victims' testimony or draw inferences dependent on special knowledge or expertise never presented at trial. See *State v. Akins*, 298 Kan. 592, 602-06, 315 P.3d 868 (2014) (prosecutor's extended discussion in closing argument about "grooming" victims of sexual abuse improper when no expert testimony admitted regarding sort of predatory conduct, thereby contributing to reversible error); *State v. Simmons*, 292 Kan. 406, 412-18, 254 P.3d 97 (2011) (prosecutor's comments in voir dire about Stockholm Syndrome, when no expert testimony would be presented on the phenomenon during trial, contributed substantially to reversible error in defendant's convictions). Rather, the remarks reflected how the prosecutor wanted the jurors to view the evidence and, in that respect, entailed fair comment. The prosecutor did not reach outside the record to embellish what had been presented at trial. Conversely, Cabrera-Sanchez' lawyer could properly argue the vague, disjointed nature of the victims' accounts to be indicative of false narratives.

The jurors, in turn, could fairly consider the evidence and weigh the persuasiveness of the arguments as against that evidence. Accord *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015) (pointing out prosecutor has wide latitude in crafting arguments and drawing reasonable inferences from admitted evidence). The prosecutor's argument did not venture outside the trial evidence and did not comment on the evidence in a way that was particularly inflammatory or otherwise impermissible.

The district court instructed the jurors that the lawyers' arguments are not evidence and should be disregarded if unsupported by the evidence. Although such an instruction

16

will not typically neutralize a flagrantly improper argument, it does channel the jurors' attention in assessing an argument that applies an advocate's shine to the facts. The art of advocacy necessarily entails shining the evidence to place the client in the best possible light consistent with that evidence. Here, the prosecutor did not overstep that role. And jurors were left free to agree or disagree with the prosecutor's argument based on their fair recollection of the evidence consistent with the district court's instructions.

Because there was no prosecutorial misconduct, we need not progress to the second prong of the analysis. Cabrera-Sanchez had failed to articulate grounds requiring reversal of his convictions for prosecutorial misconduct.

*Lifetime postrelease supervision*

Cabrera-Sanchez is, however, entitled to some relief because the trial court ordered lifetime postrelease supervision in conjunction with an off-grid indeterminate (concurrent hard 25) life sentence. In *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 (2011), our Supreme Court held: "An inmate who has received an off-grid indeterminate life sentence can leave prison only if the successor to the Kansas Parole Board grants the inmate parole. Therefore, a sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence."

Although the error was corrected in the journal entry of sentencing, where "postrelease" is crossed-out and "parole" is handwritten in its place, the oral pronouncement of a sentence controls over a subsequent written journal entry. See *State v. Arrocha*, 42 Kan. App. 2d 796, 798, 217 P.3d 467 (2009). Our Supreme Court has recognized that where the oral pronouncement is correct but the journal entry of sentencing wrong, a nunc pro tunc correction is proper. See *State v. Waggoner*, 297 Kan. 94, 99-100, 298 P.3d 333 (2013). But where part of the oral sentence imposed is incorrect, our Supreme Court has taken a different approach. In *Waggoner*, our Supreme

17

Court simply vacated that part of the sentence upon finding the sentencing court erred in orally pronouncing lifetime electronic monitoring from bench. 297 Kan. at 100. In *State v. Williams*, 298 Kan. 1075, 1077, 319 P.3d 528 (2014), our Supreme Court also simply vacated that portion of the court's oral sentence imposing an illegal lifetime postrelease period for an indeterminate life sentence. Since the district court's oral pronouncement controls and was erroneous here, we vacate the imposition of lifetime postrelease supervision in accordance with *Williams* and *Waggoner*.

Affirmed in part, reversed in part, and order for lifetime postrelease supervision vacated.